**K&L GATES LLP**
10100 Santa Monica Boulevard
Seventh Floor
Los Angeles, California 90067
Telephone: 310.552.5000
Facsimile: 310.552.5001

Seth A. Gold (SBN 163220)
seth.gold@klgates.com
Christina N. Goodrich (SBN 261722)
christina.goodrich@klgates.com

Attorneys for Gerard Caiafa and
Cyclopian Music, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLENN DANZIG, <br><br> Plaintiff, <br><br> vs. <br><br> GERALD CAIAFA; CYCLOPIAN MUSIC, INC., *et al.* <br><br> Defendants. | Case No. 2:14-CV- 02540-RGK (RZx) <br><br> **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION PURSUANT TO RULE 12(b)(2), OR IN THE ALTERNATIVE, FOR TRANSFER PURSUANT TO 28 U.S.C. § 1404(a); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION OF GERARD CAIAFA IN SUPPORT THEREOF; [PROPOSED] ORDER** <br><br> Date:      July 28, 2014 <br> Time:     9:00 am <br> Courtroom:  850 <br><br> [Assigned to Honorable R. Gary Klausner] |

1

**MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, OR IN THE ALTERNATIVE, FOR TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)**

PI-3649294 v1

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that on July 28, 2014 at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 850 of the above-captioned Court, located at 255 East Temple Street, Los Angeles, CA, 90012, Defendants Gerard Caiafa (erroneously sued as Gerald Caiafa) ("Caiafa") and Cyclopian Music, Inc. ("Cyclopian") will and hereby do move the Court to dismiss all claims in Glenn Danzig's Complaint on the basis that the Court lacks personal jurisdiction over Caiafa and Cyclopian.  As set forth in the Declaration of Gerard Caiafa and explained in the attached Memorandum of Points and Authorities, none of the relevant facts that could support the Court exercising personal jurisdiction over Caiafa and Cyclopian are present here. Cyclopian and Caiafa also will and hereby do move the Court in the alternative to transfer the above-captioned case to the District Court for the District of New Jersey pursuant to 28 U.S.C. § 1404(a) for the convenience of the witnesses and parties and in the interests of justice.

This Motion is made following the conference of counsel for Caiafa and Cyclopian and Danzig pursuant to Local Rule 7-3.  On June 5, 2014, counsel for Caiafa and Cyclopian set forth the basis for this Motion in a meet and confer letter and requested Danzig's counsel's availability to conduct the pre-filing conference.  On June 11, 2014, Caiafa's and Cyclopian's counsel sent a follow-up email to Danzig's counsel regarding their availability for the pre-filing conference.  Later that day, Danzig's counsel responded that he was not available for the conference until June 17, 2014.  Counsel for Caiafa and Cyclopian responded that it assumed Danzig would not contend the conference was untimely and based thereof agreed to schedule the conference on June 17.  Counsel for the parties conferred on June 17, 2014 but were unable to resolve their dispute.

This Motion is based upon this Notice, the attached Memorandum of Points and Authorities, the Declaration of Gerard Caiafa filed concurrently herewith, request for judicial notice, complete files and records in this action, and such other and further

**MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, OR IN THE ALTERNATIVE, FOR TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)**

1 | matters as the Court may deem just and proper to consider in connection with this
2 | Motion.
3
4 |                                         K&L GATES LLP
5
6 | Dated:  June 20, 2014              By:   /s/
7 |                                          Seth A. Gold
8 |                                          Christina N. Goodrich
  |                                          Attorneys for Gerard Caiafa and
9 |                                          Cyclopian Music, Inc.
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

3

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................... 1

II.   BACKGROUND ..................................................................................... 1

III.  JUDICIAL STANDARD ....................................................................... 5

      A.    Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2) .............................................................. 5

      B.    Motion to Transfer Venue to the District of New Jersey Pursuant to 28 U.S.C. § 1404(a) .............................................. 6

IV.   ARGUMENT ......................................................................................... 7

      A.    The Court Should Dismiss the Complaint Because the Court Lacks Personal Jurisdiction Over Caiafa and Cyclopian ............ 7

            1.    Danzig Has Not Established, and Cannot Establish, This Court's Specific Personal Jurisdiction Over Caiafa or Cyclopian .......................................................... 7

            2.    Danzig Has Not Established, and Cannot Establish, This Court's General Personal Jurisdiction Over Defendants ............... 13

      B.    Alternatively, the Court Should Transfer this Action to the United States District Court for the District of New Jersey For the Convenience of the Parties and Witnesses and in the Interests of Justice ............................................................ 14

            1.    This Action Might Have Been Brought in the District of New Jersey ................................................ 15

            2.    The Balance of Public and Private Interest Factors Favor Transfer .................................................... 15

V.    CONCLUSION .................................................................................... 17

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Federal Cases</u>

*Advanced Skin & Hair, Inc. v. Bancroft,*
   858 F. Supp. 2d 1084 (C.D. Cal. 2012) ............................................................ 11, 12

*Allstar Mktg. Grp. v. Your Store Online, LLC,*
   666 F.Supp.2d 1109 (C.D. Cal. 2009) ................................................................... 16

*Amini Innovation Corp. v. JS Imports, Inc.,*
   497 F. Supp. 2d 1093 (C.D. Cal. 2007) ................................................................... 5

*Amoco Egypt Oil Co. v. Leonis Navigation Co.,*
   1 F.3d 848 (9th Cir. 1993) ................................................................................. 13, 14

*Bancroft & Masters, Inc. v. Augusta Nat. Inc.,*
   223 F.3d 1082 (9th Cir. 2000) ............................................................................. 9, 13

*Brainerd v. Governors of the Univ. of Alberta,*
   873 F.2d 1257 (9th Cir. 1989) ................................................................................. 5

*Brayton Purcell v. Recordon & Recordon,*
   606 F.3d 1124 (9th Cir. 2010) ................................................................................. 8

*Burger King Corp. v. Rudzewicz,*
   471 U.S. 462 (1985) ................................................................................................. 8

*Calder v. Jones,*
   465 U.S. 783 (1984) ................................................................................................. 5

*CollegeSource, Inc. v. AcademyOne, Inc.,*
   653 F.3d 1066 (9th Cir. 2011) ............................................................................. 9, 10

*Cybersell, Inc. v. Cybersell, Inc.,*
   130 F.3d 414 (9th Cir. 1997) ................................................................................. 14

*Decker Coal Co. v. Commonwealth Edison Co.,*
   805 F.2d 834 (9th Cir. 1986) ................................................................................... 7

*Doe v. Unocal Corp.,*
   248 F.3d 915 (9th Cir. 2001) ............................................................................. 7, 12

i

**MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, OR IN THE ALTERNATIVE, FOR TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)**

*Evans Analytical Grp., Inc. v. Green Plant Farms, LLC*,
   12-CV-05023-LHK, 2013 WL 3963822 (N.D. Cal. July 29, 2013) ...................... 7, 8

*Forens Container v. Cho Yang Shipping*,
   245 F. Supp. 2d 1086 (N.D. Cal. 2002) ....................................................... 6

*Hoffman v. Blaski*,
   363 U.S. 335 (1960) ................................................................................ 15

*J. McIntyre Machinery, Ltd. v. Nicastro*,
   131 S. Ct. 2780 (2011) ............................................................................ 10

*Jones v. GNC Franchising, Inc.*,
   211 F.3d 495 (9th Cir. 2000) .............................................................. 6, 16

*Lang v. Morris*,
   823 F. Supp. 2d 966 (N.D. Cal. 2011) ...................................................... 9

*Mavrix Photo, Inc. v. Brand Technologies, Inc.*,
   647 F.3d 1218 (9th Cir. 2011) ..................................................... 6, 7, 13, 14

*Metz v. U.S. Life Ins. Co. in City of New York*,
   674 F. Supp. 2d 1141 (C.D. Cal. 2009) ................................................... 15

*Omeluk v. Langsten Slip & Batbyggeri A/S*,
   52 F.3d 267 (9th Cir. 1995) ...................................................................... 7

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) .................................................................... 5

*Sher v. Johnson*,
   911 F. 2d 1357 (9th Cir. 1990) ................................................................. 8

*Tuazon v. R.J. Reynolds Tobacco Co.*,
   433 F.3d 1163 (9th Cir. 2006) ................................................................ 13

*VBConversions LLC v. Now Solutions, Inc.*,
   No. 13-00853, 2013 WL 2370723 (C.D. Cal. May 30, 2013) ............................. 5, 6

*Yahoo! Inc. v. La Ligue Contre Le Racisme*,
   433 F.3d 1199 (9th Cir. 2006) ................................................................ 12

**<u>Federal Statutes</u>**

28 U.S.C. § 1404................................................................................... 15, 16

ii

28 U.S.C § 1404(a) ................................................................................................ 1, 6, 15

**Rules**

Federal Rule of Civil Procedure 12(b)(2) ................................................................. 5, 6, 17

Federal Rule of Civil Procedure 12(b)(6) .................................................................. 9, 17

iii

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This dispute has no connection to California other than the fortuity that the plaintiff, Glenn Danzig, is a resident of California. Despite Danzig's residency in California, his Complaint does not allege any facts that occurred in California on which the claims at issue are predicated. Rather this lawsuit, in reality, concerns the business practices of Cyclopian Music, Inc. ("Cyclopian"), a New Jersey corporation with its principal place of business in New Jersey, and Cyclopian's President, Gerard Caiafa (erroneously sued as Gerald Caiafa) p/k/a Jerry Only ("Caiafa"), who is also a resident of New Jersey. None of these business practices uniquely, or even specifically, targeted California. Accordingly, this Court lacks personal jurisdiction over Cyclopian and Caiafa.

Even assuming *arguendo* the Court were to find the assertion of personal jurisdiction appropriate, this lawsuit nevertheless should be transferred to the U.S. District Court for the District of New Jersey under 28 U.S.C § 1404(a) because, among other things, (1) Cyclopian is a New Jersey corporation with no material contacts to California; (2) Caiafa is a New Jersey resident with no material contacts to California; (3) none of the relevant conduct occurred in California; (4) litigating this case in California would require, for both party and non-party witnesses, repeated travel of the nearly 3,000 miles separating New Jersey and California; and (5) there is no comparable convenience to proceeding with the litigation in California as Danzig is the only party with any connection to California.

## II.   BACKGROUND

The MISFITS is a punk rock music group initially formed in the late 1970's. The two founding members of the group were Danzig and Caiafa. The initial incarnation of the MISFITS recorded and performed from approximately 1977 through 1983, at which time the group disbanded. Over the next decade, Danzig unilaterally entered into a series of deals to release recordings of the MISFITS without the

**MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, OR IN THE ALTERNATIVE, FOR TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)**

knowledge or consent of, and compensation to, the other contributing members of the group.  Upon becoming aware of Danzig's unlawful conduct, in or around 1992, the other members of the MISFITS during the 1977-1983 period, including Caiafa, filed suit against Danzig in the United States District Court for the Southern District of New York (the "1992 Action").

The 1992 Action was resolved by a settlement agreement dated December 31, 1994 (the "Settlement Agreement").  *See* Compl. ¶ 18; RJN Ex. 7.  Among other things, the Settlement Agreement granted the plaintiffs "the exclusive right to publicly perform and record as 'The Misfits.'"  RJN Ex. 7.  Those rights subsequently were granted to Cyclopian, of which Caiafa is President.  As part of the Settlement Agreement, the parties agreed to issue a press release regarding the re-launch of the Misfits that was attached as an exhibit to the Settlement Agreement and provided in pertinent part:  "The Misfits are also pleased to announce that a new group which will perform and record as the Misfits has been formed.  This group will consist of Jerry Caiafa and his brother Paul Caiafa who were former members of the Misfits as well as new members . . . *Glenn Danzig will not be a member of this new/old group*."  *Id.* at Ex. C (emphasis added).  The Settlement Agreement further provided that Danzig would not receive any payments from such future performances and recordings, nor would he receive any benefits from future activities of the group.  *Id.*, § 7.

Danzig, therefore, made clear in the Settlement Agreement and otherwise his intention *not* to be associated or identified with the MISFITS going forward.  In addition to the disclaimer in the press release announcing the formation of the new MISFITS group, the Settlement Agreement expressly required that "for a period of two years, [Cyclopian] shall advise all promoters of [any] live concerts and include in all contracts relating thereto provisions indicating that any promotional material generated in connection with performance by the Misfits identifies the current members of the band or *specifies that Danzig is not a member of the band*."  *Id.* (emphasis added).  Concurrent with the execution of the Settlement Agreement, in September 1994,

**MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, OR IN THE ALTERNATIVE, FOR TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)**

1  Danzig further confirmed his intention not to be identified with the MISFITS going

2  forward by abandoning his pending trademark application (App. No. 74/300,499) for

3  MISFITS in Class 16.

4        Since 1994, Cyclopian and Caiafa have exclusively controlled the MISFITS as

5  an active musical group, releasing six full length music albums of new MISFITS

6  recordings as well as various other singles and EPs, and promoting live concert tours

7  worldwide.  Ancillary to the MISFITS' popularity and success as an active musical

8  group, Cyclopian has developed an extensive licensing program involving myriad

9  types of MISFITS-branded products.  In recognition of its exclusive use and

10 exploitation of the MISFITS since 1994 and in connection with the foregoing

11 activities, the United States Patent and Trademark Office ("PTO") granted Cyclopian

12 the following federal trademark registrations in the MISFITS name and related logos:

13 (1) U.S. Trademark registration No. 2,793,533 for the mark MISFITS for various types

14 of jewelry in International Class 14; (2) U.S. Trademark Registration 2,634,215 for the

15 mark MISFITS for (i) musical sound recordings and prerecorded audio tapes and

16 videotapes featuring recorded musical performances and music videos in International

17 Class 9; (ii) various paper goods and printed matter in International Class 16; and (iii)

18 musical entertainment services in International Class 41; (3) U.S. Trademark

19 Registration No. 2,735,848 for the mark MISFITS (Stylized) for (i) musical sound

20 recordings and prerecorded audio tapes and videotapes featuring recorded musical

21 performances and music videos in International Class 9; and (ii) various paper goods

22 and printed matter in International Class 16; and (4) U.S. Trademark Registration No.

23 2,770,984 for the "Fiend Skull" design for (i) various types of jewelry in International

24 Class 14; (ii) various paper goods and printed matter in International Class 16; (iii)

25 various types of clothing in International Class 25; (iv) various toy products in

26 International Class 28.  In addition, Cyclopian owns U.S. Trademark Application Nos.

27 76/605,515 and 76/605,840 the MISFITS name and related logos for various types of

28 clothing in International Class 25 (collectively with the above identified federal

trademark registration, the "MISFITS Marks" or the "Marks"). Compl. ¶ 22; RJN Exs. 1-6.

Exclusively due to their creativity and effort, Cyclopian and Caiafa have developed the MISFITS into an iconic lifestyle brand and, in the process, considerably expanded the audience and fan base for MISFITS goods and services into markets previously untapped by the 1977-1983 incarnation of the MISFITS. Danzig has made no contribution to this artistic and commercial success whatsoever. Indeed, by his own insistence, Danzig has had no association with the Misfits since at the latest 1994.

Belatedly recognizing the economic value of the MISFITS Marks, Danzig has attempted to unfairly profit from the goodwill Cyclopian developed in the MISFITS Marks. Despite renouncing any affiliation with the MISFITS by 1994 and having full knowledge of Cyclopian's use and registration of the MISFITS name and logos for decades, Danzig now claims "co-ownership" in the MISFITS Marks under the Settlement Agreement. In particular, Danzig claims co-ownership of the most famous and valuable MISFITS logo known as the "Fiend Skull" (Registration No. 2770984) — a trademark uniquely developed by, and identified with Cyclopian, which the 1977-1983 incarnation of the MISFITS never used as a trademark. Such claims, and this lawsuit in general, are nothing more than a naked money grab. After decades of watching Cyclopian's success in merchandising the MISFITS Marks without him, Danzig seeks to exploit Cyclopian's effort for his own financial gain.

Worse yet, Danzig seeks to drag Caiafa and Cyclopian 3,000 miles across the country to defend against his deficient claims. As set forth in the Declaration of Gerard Caiafa ("Caiafa Decl."), Caiafa and Cyclopian are not residents of California, do not have offices in California, do not own property in California, do not have bank accounts in California, have no employees in California, have not paid income tax to California, and have never marketed MISFITS-branded merchandise uniquely, or even specifically, toward California. *See* Caiafa Decl. ¶¶ 5-21. In addition, Caiafa and Cyclopian did not engage in any wrongful conduct targeted toward Danzig in

4

California.  *Id.* ¶¶ 22-25.  Indeed, Danzig does not allege or identify even a single act or omission by Caiafa or Cyclopian that occurred in California which "but for" its occurrence or nonoccurrence would have given rise to his claims.  Accordingly, the Court should dismiss Danzig's Complaint for failure to establish personal jurisdiction.

## III.   <u>JUDICIAL STANDARD</u>

### A.   <u>Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2)</u>

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate."  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citing *Sher v. Johnson*, 911 F. 2d 1357, 1361 (9th Cir. 1990)).  In this regard, uncontroverted allegations are to be taken as true, but a plaintiff may not rely on the bare allegations in his complaint when contradicted by affidavits.  *See VBConversions LLC v. Now Solutions, Inc.*, No. 13-00853, 2013 WL 2370723 at *3 (C.D. Cal. May 30, 2013).  Instead, a plaintiff must demonstrate "facts that, if true, would support the court's exercise of jurisdiction over the defendant."  *Amini Innovation Corp. v. JS Imports, Inc.*, 497 F. Supp. 2d 1093, 1100 (C.D. Cal. 2007).

"Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same."  *Schwarzenegger*, 374 F.3d 800-01.  For a court to exercise personal jurisdiction over a nonresident defendant, "that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and justice.'"  *Schwarzenegger*, 374 F.3d 800-01 (quoting *International Shoe Co. v. Washington*, 66 S. Ct. 154 (1945)).  "Each defendant's contacts with the forum State must be assessed individually."  *Calder v. Jones*, 465 U.S. 783, 790 (1984); *see also Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1258 (9th Cir. 1989) ("Personal jurisdiction over each defendant must be analyzed individually.")

5

Personal jurisdiction can be either "specific" or "general."  Specific jurisdiction is only appropriate "where a cause of action arises out of or is related to the defendant's activities in the forum state." *VBConversions*, 2013 WL 2370723 at *2 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985)).  On the other hand, general jurisdiction exists when a defendant engages in "continuous and systematic general business contacts that approximate physical presence in the forum state." *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (internal citations and punctuation omitted).  The Court should dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(2) because Danzig has failed to plead any facts sufficient to establish either specific or general personal jurisdiction over Caiafa or Cyclopian.

## B.   Motion to Transfer Venue to the District of New Jersey Pursuant to 28 U.S.C. § 1404(a)

Under 28 U.S.C. § 1404(a), district courts are vested with the discretionary authority to transfer a cause of action to a more convenient forum.  Specifically, "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The Ninth Circuit has held that a "district court has [broad] discretion to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness'." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (quoting *Stewart Org., Inc. v. Ricoh Cor.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)); *see also Forens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086, 1088 (N.D. Cal. 2002) ("In considering motions to transfer venue under [§ 1404(a)], courts look to:  (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice.") (citing *Kasey v. Molybdenum Corp*. 408 F.2d 16, 20 (9th Cir. 1969)).  To this end, transfer is warranted where the movant makes "a strong showing of

6

inconvenience[.]" *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (citation omitted).

## IV.   ARGUMENT

### A.   The Court Should Dismiss the Complaint Because the Court Lacks Personal Jurisdiction Over Caiafa and Cyclopian

#### 1.   Danzig Has Not Established, and Cannot Establish, This Court's Specific Personal Jurisdiction Over Caiafa or Cyclopian

Danzig fails to allege any facts that would subject Caiafa or Cyclopian to specific personal jurisdiction in California.  In assessing specific jurisdiction, the Ninth Circuit uses a three-prong analysis:

> (1) The non-resident defendant must *purposefully direct his activities* or consummate some transaction with the forum or resident thereof, or perform some act by which he *purposefully avails himself* of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Mavrix Photo*, 647 F.3d at 1227-28 (emphasis in original) (citing *Schwarzenegger*, 374 F.3d at 802 (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).  The burden is on the plaintiff to satisfy the first two prongs.  *Evans Analytical Grp., Inc. v. Green Plant Farms, LLC*, 12-CV-05023-LHK, 2013 WL 3963822, at *4 (N.D. Cal. July 29, 2013) (citing *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011)).  If plaintiff meets that burden, the defendant must "set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable."  *Id.* (citing *Burger King Corp.*, 471 U.S. at 476-78).  Unless all three requirements are satisfied, exercising jurisdiction "deprive[s] the defendant of due process of law."  *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 280 (9th Cir. 1995); *see also Doe v.*

7

1    *Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) (explaining that whether specific

2    jurisdiction exists "turns on an evaluation of the nature and quality of the defendant's

3    contacts in relation to the cause of action."). Danzig has failed to allege facts sufficient

4    to satisfy his burden under each prong of the analysis.

5         a.    *Danzig Has Not Alleged Facts to Establish the "Purposeful*

6              *Availment" or "Direction" Prong Against Caiafa or*

7              *Cyclopian*

8         The first prong of the personal jurisdiction analysis may be satisfied by either

9    "purposeful availment" in the case of contract claims, or "purposeful direction" in the

10   case of tort claims. *Brayton Purcell v. Recordon & Recordon*, 606 F.3d 1124, 1128

11   (9th Cir. 2010). Danzig has failed to allege facts sufficient to establish that his

12   contract-based or tort-based claims satisfy those tests.

13        Regarding his contract-based claims, Danzig must allege facts to establish that

14   Caiafa and Cyclopian "performed some type of ***affirmative conduct which allows or***

15   ***promotes*** the transaction of business within the forum state." *Sher*, 911 F.2d at 1262

16   (quoting *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988))

17   (emphasis added). He has not. While Danzig alleges that ***he*** "entered into" the 1994

18   Settlement Agreement in Los Angeles, he concedes that Caiafa entered into the same

19   in New York. *See* Compl. ¶ 18. Cyclopian, meanwhile, was not even a party to the

20   Settlement Agreement. Furthermore, the Settlement Agreement expressly provides

21   that New York law shall govern its interpretation.

22        Under these facts, Danzig conspicuously has failed to allege sufficient facts to

23   establish specific jurisdiction over Caiafa or Cyclopian (which was not a party to the

24   Settlement Agreement) with respect to his breach of contract claim because "the mere

25   existence of a contract with a party in the forum state does not constitute sufficient

26   minimum contacts for jurisdiction." *Evans Analytical*, 2013 WL 3963822, at *5

27   (citing *Sher*, 911 F.2d at 1362); *see also Burger King*, 471 U.S. at 478 ("[A]n

28   individual's contract with an out-of-state party alone can[not] automatically establish

8

1    sufficient minimum contacts in the other party's home forum."); *Lang v. Morris*, 823

2    F. Supp. 2d 966, 977 (N.D. Cal. 2011) ("Personal jurisdiction cannot be based on

3    attenuated contacts, or of the unilateral activity of another party or a third person.")

4    (citations and internal punctuation omitted).

5         Danzig's allegations regarding his tort-based claims are equally deficient to

6    establish specific jurisdiction.  As regards those claims, Danzig must allege facts to

7    establish that Caiafa and Cyclopian "purposefully direct[ed] [their] activities" at

8    California "focus[ing] on the forum in which the defendant's actions were felt [and]

9    whether or not the actions themselves occurred within the forum."  *CollegeSource*, 653

10   F.3d at 1077 (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199,

11   1206 (9th Cir. 2006)).  Danzig can satisfy the "effects test" only he alleges facts to

12   establish that Caiafa and Cyclopian "(1) committed an intentional act, which was (2)

13   ***expressly aimed*** at the forum state, and (3) caused harm, the brunt of which is suffered

14   ***and which [they] know[] is likely to be suffered*** in the forum state."  *Bancroft &*

15   *Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) (emphasis

16   added).

17        Danzig appears to allege that personal jurisdiction exists as to his Lanham Act

18   and tortious interference claims because Caiafa and Cyclopian directed purported

19   misrepresentations to Hot Topic in Los Angeles.  *See* Compl. ¶ 34.  In reality,

20   however, Danzig has failed to allege that Caiafa and Cyclopian engaged in any actual,

21   wrongful conduct directed toward Hot Topic, particularly in California.  Rather,

22   Danzig merely has alleged, without any factual enhancement, that Caiafa and

23   Cyclopian placed certain conditions on their agreement to do business with Hot Topic

24   (which allegations are substantively defective for the reasons set forth in Defendants'

25   Rule 12(b)(6) Motion to Dismiss being filed concurrently herewith).  Without the

26   allegation of any specific facts, there is no basis for the Court to accept the inference

27   that Caiafa or Cyclopian had any communications with Hot Topic regarding Danzig.

28   In fact, the record shows they did not.  *See* Caiafa Decl. ¶¶ 22-25.  Specifically, the

9

1    record is undisputed that Cyclopian's dispute with Hot Topic had nothing "to do with

2    Glenn Danzig or any of the allegations set forth in the Complaint.  Cyclopian had no

3    communications with Hot Topic regarding Glenn Danzig in connection with the

4    dispute . . . "  *Id.* ¶ 25.  Defendants' evidence further corroborates this undisputed

5    assertion.

6         Similarly, there is no basis to conclude, or for Danzig to allege, that Caiafa

7    personally directed any activities whatsoever to California.  Once more, the record is

8    undisputed that he did not.  *See id.* ¶¶ 5-25.  Further, Danzig's allegation that Caiafa

9    and Cyclopian had contacts with "merchandisers" other than Hot Topic is mere

10   makeweight.  There is not a shred of factual basis for such a conclusion in the

11   Complaint.

12        Finally, to the extent Danzig argues that the mere availability of MISFITS goods

13   and services in California is sufficient for the Court to exercise jurisdiction in this case,

14   he is wrong as a matter of law — the U.S. Supreme Court has made clear that the

15   stream of commerce theory does not apply in these circumstances.  *See J. McIntyre*

16   *Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011).  Significantly, in *J. McIntyre*

17   *Machinery*, the U.S. Supreme Court, under a purposeful availment analysis, clarified

18   the so-called "stream of commerce" theory of personal jurisdiction and held that "[t]he

19   defendant's transmission of goods permits the exercise of jurisdiction ***only where the***

20   ***defendant can be said to have targeted the forum***; as a general rule, it is not enough

21   that the defendant might have predicted that its goods will reach the forum State."  *Id.*

22   at 2788 (emphasis added).  Likewise, the stream of commerce theory is inappropriate

23   under the purposeful direction analysis because the Ninth Circuit has held that "the

24   'express aiming' requirement [of the effects test]. . . is satisfied [only] when the

25   defendant is alleged to have engaged in wrongful conduct ***targeted at the plaintiff***

26   ***whom the defendant knows to be a resident of the forum state.***"  *CollegeSource*, 653

27   F.3d at 1077 (quotation and citation omitted).

28

10

1    Here, the uncontroverted evidence demonstrates that Caiafa and Cyclopian did

2    not engage in any wrongful conduct targeted toward Danzig in California.  *See* Caiafa

3    Decl. ¶¶ 5-21.  In particular, Caiafa's declaration establishes, among other things, that

4    (a) "[i]n or around 2003, Cyclopian had discussions with Hot Topic regarding a

5    dispute over unauthorized merchandise sold by Hot Topic that Cyclopian believed to

6    be infringing of its intellectual property rights" and (b) Cyclopian's dispute with Hot

7    Topic had nothing "to do with Glenn Danzig" or any of the allegations set forth in the

8    Complaint.  *Id.* ¶¶ 22, 25.  The uncontroverted evidence further demonstrates that

9    Caiafa and Cyclopian are not residents of California, do not have offices in California,

10   do not own property in California, do not have bank accounts in California, have no

11   employees in California, have not paid income tax to California, have never marketed

12   MISFITS-branded merchandise uniquely, or even specifically, toward California.  *See*

13   Caiafa Decl. ¶¶ 5-21.  Accordingly, Danzig has failed to establish the first prong of the

14   personal jurisdiction analysis with respect to both Caiafa and Cyclopian.

15           b.    *Danzig Has Not Alleged Facts to Establish His Claims Arise*

16                  *Out Of or Relate to the Alleged Contacts with California.*

17           "[A] lawsuit arises out of a defendant's contacts with a forum state if there is a

18   direct nexus between the claims being asserted and the defendant's activities in the

19   forum."  *See Advanced Skin & Hair, Inc. v. Bancroft*, 858 F. Supp. 2d 1084, 1090

20   (C.D. Cal. 2012).  To demonstrate that Danzig's claims arise out of or result from

21   defendants' forum-related contacts, Danzig must show that "but for" defendants

22   contacts with the forum state, his claim would not have arisen.  *See id.* (citing *Ballard*

23   *v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995)).  Danzig fails to meet this standard, just

24   as he fails to meet the purposeful availment prong.

25           Danzig does not allege or identify even a single act or omission by Caiafa or

26   Cyclopian that occurred in California which "but for" its occurrence or nonoccurrence

27   would have given rise to his claims.  As explained above, the only California-centric

28   allegations relate to Hot Topic and the uncontroverted evidence establishes that those

11

---

**MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, OR IN THE ALTERNATIVE, FOR**
**TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)**

1    allegations cannot support the conclusion that Caiafa and Cyclopian engaged in any

2    wrongful conduct targeted toward Danzig in California.  *See* Caiafa Decl. ¶¶ 22-25.

3    Thus, Danzig provides no nexus between any forum-related conduct by any

4    Defendants and the facts or events which allegedly give rise to his claims.

5               c.    *Exercising Personal Jurisdiction over Caiafa and Cyclopian*

6                     *on the Basis of Danzig's Allegations Would Not Comport*

7                     *With Traditional Notions of Fair Play and Substantial*

8                     *Justice.*

9          Assuming *arguendo* that Danzig could meet his burden under the first two

10   prongs, the third prong of the Ninth Circuit's test for specific personal jurisdiction—

11   the "reasonableness" inquiry—requires that personal jurisdiction over the defendant

12   must "comport with traditional notions of fair play and substantial justice."  *Yahoo!*

13   *Inc.*, 433 F.3d at 1205; *see also Unocal Corp.*, 248 F.3d at 925 ("The bare existence of

14   minimum contacts is not sufficient to allow a court to exercise personal jurisdiction

15   over a defendant.").  The Ninth Circuit balances the following seven factors to

16   determine whether the exercise of personal jurisdiction is reasonable:

17         (1) the extent of the defendant's purposeful interjection into the

18         forum; (2) the burden on the defendant in litigating in the forum; (3)

19         the extent of conflict with the sovereignty of the defendant's state; (4)

20         the forum state's interest in adjudicating the dispute; (5) the most

21         efficient judicial resolution of the controversy; (6) the importance of

22         the forum to the plaintiff's interest in convenient and effective relief;

23         and (7) the existence of an alternative forum.

24   *Advanced Skin & Hair*, 858 F. Supp. 2d at 1091.  None of the relevant reasonableness

25   factors support personal jurisdiction here.

26         Litigating this case in California would create a great burden on Caiafa and

27   Cyclopian, both of which reside or are incorporated in New Jersey.  Caiafa Decl. ¶¶ 5-

28

12

6, 20.  In addition, any witnesses and evidence of Cyclopian are located in New Jersey/New York.  Further, California has no interest in adjudicating this dispute, which bears no relation to the State other than it being Danzig's residence.  In fact, with regard to Danzig's breach of contract claim, New York law indisputably applies to the Court's interpretation of the Settlement Agreement.  RJN, Ex. 7.  Litigating the case in California also is inefficient because neither Defendant has any connection with the State, none of the alleged claims occurred there and no evidence is located there.  Caiafa Decl. ¶¶ 5-25.  Finally, there exists a far more appropriate forum for Danzig to bring his claim— the U.S. District Court for the District of New Jersey— where Caiafa, Cyclopian and relevant evidence in fact are located.

> ### 2.   Danzig Has Not Established, and Cannot Establish, This Court's General Personal Jurisdiction Over Defendants

Having failed to demonstrate the Court's specific personal jurisdiction over Caiafa or Cyclopian, Danzig undoubtedly has failed to establish general personal jurisdiction.  General jurisdiction "is an ***exacting*** standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world."  *Mavrix Photo*, 647 F.3d at 1223 (quoting *Schwarzenegger*, 374 F.3d at 801) (emphasis added); *see also Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1171-74 (9th Cir. 2006) (explaining that courts are "understandably reluctant to establish general jurisdiction" because of the exacting standard).  Indeed, general jurisdiction is ***"unusual,"*** ***"disfavored"*** and is exercised only in ***"rare"*** instances.  *See Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d 848, 851 n.3 (9th Cir. 1993) (collecting cases denying general jurisdiction and noting that the U.S. Supreme Court has upheld general jurisdiction only once) (emphasis added).  General jurisdiction demands a higher standard than specific jurisdiction and requires "substantial" or "continuous and systematic" ties approximating physical presence.  *Bancroft & Masters*, 223 F.3d at 1086.  Under this "exacting standard," the Ninth Circuit "regularly [has] declined to

13

find general jurisdiction even where the contacts were quite extensive." *Amoco Egypt*, 1 F.3d at 851 n.3.

Here, Danzig's Complaint makes it clear that not only are Defendants' contacts with California not extensive, they are practically nonexistent.  Given the lack of allegations in the Complaint of activities by Defendants purposefully directed toward California to support even specific jurisdiction, there certainly are insufficient allegations to meet the exacting burden necessary for general jurisdiction.  Facts that typically underlie general jurisdiction include having offices or staff in California, registering to do business in the state, employing registered agents for service of process, and paying of state taxes.  *See Mavrix Photo*, 647 F.3d at 1225 (explaining that defendant's contacts with California fell well short of the "requisite showing for general jurisdiction" because these facts were all lacking).  None of these apply to Defendants, much less give rise to "substantial" or "continuous and systematic" contacts with California.[1]

> **B.**    **Alternatively, the Court Should Transfer this Action to the United States District Court for the District of New Jersey For the Convenience of the Parties and Witnesses and in the Interests of Justice**

If the Court is inclined to deny Defendants' Motion to Dismiss based on lack of personal jurisdiction, Defendants request the Court transfer the action to the District of New Jersey, where the bulk of the witnesses and evidence are located.  When

---

[1] To the extent that Danzig suggests (but has not specifically alleged) that Defendants have systematically and continuously conducted business in California because they control a website — www.misfits.com — which sells merchandise and can be accessed in California, the Ninth Circuit has held personal jurisdiction may not be established via a website unless the website "deliberately directed [Defendants'] merchandising efforts toward [California] residents."  *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997).  Danzig has not and cannot allege that www.misfits.com is ***specifically*** directed to California residents just as it is not specifically directed to residents of any other forum.

---

**MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, OR IN THE ALTERNATIVE, FOR TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)**

determining whether to exercise its discretion to transfer an action under § 1404(a), a court first determines whether the action "might have been brought" in the transferee district.  *See* 28 U.S.C. § 1404; *Metz v. U.S. Life Ins. Co. in City of New York*, 674 F. Supp. 2d 1141, 1145 (C.D. Cal. 2009).  The moving party makes this showing by establishing that the transferee district possesses subject matter jurisdiction over the action, personal jurisdiction over the defendant, and that venue would have been proper in the transferee district.  *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960).  Second, if the action "might have been brought" in the transferee district, the court examines the private and public interest factors, to determine whether they favor transfer.  *Metz v. U.S. Life Ins. Co. in City of New York*, 674 F. Supp. 2d 1141, 1145 (C.D. Cal. 2009).

    1.   <u>This Action Might Have Been Brought in the District of New Jersey</u>

There is no question that Danzig could have filed this case in the District Court for the District of New Jersey.  Caiafa is a resident of New Jersey and Cyclopian's principal place of business is in New Jersey.  Caiafa Decl. ¶¶ 5-6.  Thus, both are subject to personal jurisdiction in the District of New Jersey.  Moreover, venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."  As a corporation, Cyclopian resides in any district where it is subject to personal jurisdiction, i.e., New Jersey.  Given that this threshold determination is satisfied, the transfer analysis moves to weighing the private and public interest factors.

    2.   <u>The Balance of Public and Private Interest Factors Favor Transfer</u>

The Ninth Circuit has identified various factors which are to be considered in adjudicating a motion to transfer venue.  The relevant factors include:

    (1)The location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the

15

contacts relating to the plaintiff's cause of action in the chosen forum, (6) the difference in costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones*, 211 F.3d at 498-99 (citing *Stewart*, 487 U.S. at 29-31).  The court also can consider the "relevant public policy of the forum state, if any." *Id.* at 499.

In this case, the factors clearly favor transfer of this action to the New Jersey District Court.  Cyclopian is a New Jersey corporation and Caiafa is a New Jersey resident.  Caiafa Decl. ¶¶ 5-6.  Cyclopian and Caiafa have no material contacts to California and none of the relevant conduct occurred in California.  *Id.* ¶¶ 7-25. In fact, the agreement upon which Danzig bases his claims provides that New York law governs its interpretation.  Additionally, there is no significant evidence located in California and none of the significant witnesses—other than Danzig—reside in California.  *Id.*  Although a plaintiff's choice of forum is a factor, courts have recognized that "[t]he convenience of witnesses is often the most important factor in determining whether a transfer under §1404 is appropriate." *Allstar Mktg. Grp. v. Your Store Online, LLC*, 666 F.Supp.2d 1109, 1132 (C.D. Cal. 2009).  Litigating this case in California would require, for both party and non-party witnesses, repeated travel of the nearly 3,000 miles separating New Jersey and California.  Those travel costs quickly would become exorbitant.

Conversely, there is no comparable convenience to proceeding with the litigation in California.  Danzig is the only party with any connection to California.  But his claims are based on (conclusory) allegations with no link to California (and which are factually unsupported in any event).  To the extent that Danzig seeks evidence and witness testimony, it predominantly will be found in New Jersey/New York.  Thus, in contrast to the extreme inconvenience to defendants and witnesses, the comparative benefit to Danzig is insignificant.  Finally, it would be unfair and inequitable to burden a California court and California residents with investing time

16

1 | and resources in managing this case and serving on a jury at trial for a dispute that does
2 | not implicate California's interests.

3 | **V.**  **CONCLUSION**

4 |   Accordingly, this Court should exercise its discretion and transfer Danzig's
5 | action, to the extent it is not dismissed pursuant to Fed.R.Civ.P. 12(b)(2) and 12(b)(6),
6 | to the U.S. District Court for the District of New Jersey.

7 |                                    K&L GATES LLP

8 |

9 | Dated:  June 20, 2014                  By:  /s/
10 |                                             Seth A. Gold
11 |                                             Christina N. Goodrich
    |                                             Attorneys for Gerard Caiafa and
12 |                                             Cyclopian Music, Inc.

17