**EXHIBIT 2**

## Steve Rothschild

| | |
|---|---|
| **From:** | Krasik, Curtis B. <Curtis.Krasik@klgates.com> |
| **Sent:** | Thursday, December 18, 2014 2:11 PM |
| **To:** | Steve Rothschild |
| **Cc:** | Peter Paterno; Joe Carlone; Krasik, Curtis B. |
| **Subject:** | RE: Trademark and reunion discussion |

FOR SETTLEMENT PURPOSES ONLY
SUBJECT TO FED. R. EVID. 408

Steve,

This is in response to your December 15, 2014 email.  Before addressing the specific settlement terms you proposed, while I do not intend to spend the time or money responding in detail to your self-serving mischaracterization of the lawsuit, I am compelled briefly to respond to certain particularly glaring misstatements you made.  First, your lawsuit, which you filed to derail the long-awaited culmination of the proceedings in the TTAB, has been gutted.  All of your clams alleging that my clients somehow breached the 1994 settlement agreement have been dismissed with prejudice, and those rulings will now be used to put a final bullet in the opposition actions pending in the TTAB.  You are left with only a tortious interference claim with respect to a single retailer that survived a motion to dismiss only because the court declined to consider Cyclopian's long-preexisting settlement agreement with Hot Topic, having nothing whatsoever to do with Danzig, which obligated Hot Topic to purchase Fiend Skull merchandise exclusively from Cyclopian or its licensees.  When the court is able to consider that settlement agreement on summary judgment, it clearly will bar your tortious interference claim.  So your lawsuit is worthless and, your decision to file it, has now given us legal rulings to succeed in getting the opposition actions dismissed in the TTAB.

Second, it appears you either misunderstood or purposefully mischaracterized my comment about trade libel.  Suffice it to say, there is no trade libel claim in the case; nor could there be.  You could not and cannot even allege the elements of trade libel, including, in particular, any actual malice.

Third, your threat of attorneys' fees under the Lanham Act is specious.  As you presumably know, attorneys' fees are only available under the Lanham in "exceptional circumstances" which is an exceedingly high standard.  While you baldly assert that Danzig did not perform as the Misfits, the promotional materials we have on which the counterclaim is predicated (which will be produced to you in discovery upon request) says otherwise.  Thus, Cyclopian clearly had a good faith basis for the assertion of its counterclaim.  Indeed, contrary to your frivolous threat of attorneys' fees, Cyclopian has a strong claim for unfair competition against Danzig for which we will seek, among other things, disgorgement of his profits from the shows at issue.

Turning to the specific settlement terms you proposed, they are not acceptable; however, Cyclopian proposes the following counter-offer:
1.  Agreement on a number of reunion shows to be negotiated, and split all proceeds (including merch for the tour as well as a potential new commercial line of reunion-specific merch to be sold at retail) 50/50.
2.  We agree with your proposal that other band members, including Doyle, will be paid as employees.
3.  Cyclopian agrees to Danzig's co-ownership of the Misfits word mark and Misfits horror font logo.
4.  Cyclopian agrees to grant Danzig a perpetual (for his lifetime), non-exclusive, non-transferrable license to the Fiend Skull (without alteration or derogatory usage), in consideration for which Danzig will pay Cyclopian 20% of revenues on Fiend Skull merch; as a Cyclopian-licensee, Danzig (as well as any authorized Danzig-licensees) would have the ability to sell Fiend Skull merch to Hot Topic.
5.  The settlement agreement will need to build in protections to ensure that Danzig follows through on his commitments with respect to the reunion shows in order to receive the foregoing trademark rights (e.g., liquidated damages or vesting of the trademark rights after the reunion shows).

Please let me know if the terms of this counter-offer are acceptable. If it would be helpful, John Cafiero (manager of the Misfits and Cyclopian) and I are available for a call to discuss the business points in greater detail.

---

**From:** Steve Rothschild [mailto:Rothschild@khpblaw.com]
**Sent:** Monday, December 15, 2014 3:57 PM
**To:** Krasik, Curtis B.
**Cc:** Peter Paterno; Joe Carlone
**Subject:** Trademark and reunion discussion

Curt:

This shall confirm our settlement discussion today and is subject to EC 408. I suggested the following:

1. Glenn and Jerry agree to a number of reunion shows to be negotiated, and split net Misfits guarantees and other proceeds (including merch) 60 (Glenn)/40 (Jerry).
2. Other band members, including Doyle, be paid as employees.
3. Jerry agrees that Glenn has equal rights to exploit the marks, and to advise Hot Topic of same.
4. Glenn will consider not competing with Jerry for Hot Topic's business for a reasonable period to be negotiated. You mentioned that previous negotiations included a possible lump sum payment to Jerry. That might be a possibility if the parties agree that Glenn can sell Misfits designs to Hot Topic immediately.
5. Another possibility I didn't mention, but that could benefit both sides: Glenn and Jerry agree to enter into an agreement with a major merchandiser jointly, which would put them in a better bargaining position than they are now. I understand that there are ways to address any existing merchandising commitments Jerry has that are not terminable at will.

I also want to reiterate our position on damages. The court held that Glenn stated a claim that Jerry prevented Glenn from doing business with Hot Topic by falsely representing that Glenn has no rights in the marks. If he prevails and can show that, but for Jerry's misrepresentations, Hot Topic would have done business with him (as we are certain it would have done), Jerry will be liable to Glenn for the revenues Glenn would have received had Hot Topic done business with him for at least the last three years. One measure of those damages is Jerry's revenues for selling goods that Glenn would have sold but for Jerry's misrepresentation.

Your statement that we have not expressly alleged trade liable and, therefore, are not entitled to use Jerry's Hot Topic revenues as a measure of damages, is incorrect. Jerry's revenues obviously are evidence of what Glenn would have received, regardless of the theory of the case. In addition, the Court specifically held that Glenn has alleged trade libel as the underlying basis for his interference claim. Trade libel is part of this case. Pleadings also can always be amended—even at trial—to conform to proof. Of course, if Glenn prevails, Jerry also will face exposure for punitive damages.

Jerry's Lanham Act claim also puts him at risk of having to pay Glenn's attorney fees, as the Lanham Act provides. Glenn did not perform "as the Misfits." He performed Misfits songs that he wrote. Nothing prohibits that. Please also note that, since Doyle performed with Glenn, Glenn will have to file a counterclaim for contribution from Doyle in the extremely unlikely event that a jury were to find that performing Misfits songs is the same as performing as the Misfits.

Stephen D. Rothschild
King, Holmes, Paterno & Berliner LLP
1900 Avenue of the Stars, 25th Floor
Los Angeles, CA 90067
Telephone:  310-282-8986
Facsimile:  310-282-8903
Email:        rothschild@khpblaw.com

This electronic message contains information from the law firm of K&L Gates LLP.  The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only.  If you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited.  If you have received this e-mail in error, please contact me at Curtis.Krasik@klgates.com.