**EXHIBIT 8**

# Yvette Toko

| | |
|---|---|
| **From:** | Steve Rothschild |
| **Sent:** | Tuesday, February 03, 2015 2:51 PM |
| **To:** | 'Krasik, Curtis B.' |
| **Cc:** | Peter Paterno; Joe Carlone |
| **Subject:** | RE: Draft MOU of Settlement Terms |

Great.  Just going through the trademarks.


Stephen D. Rothschild
King, Holmes, Paterno & Berliner LLP
1900 Avenue of the Stars, 25th Floor
Los Angeles, CA 90067
Telephone:  310-282-8986
Facsimile:   310-282-8903
Email:       rothschild@khpblaw.com

From: Krasik, Curtis B. [mailto:Curtis.Krasik@klgates.com]
Sent: Tuesday, February 03, 2015 2:51 PM
To: Steve Rothschild
Subject: RE: Draft MOU of Settlement Terms


Thanks.  I will take out the reference to a termination date.  I spoke to my client and we are agreeable to a minimum of 6 shows.  I will make these two changes to the draft MOU and re-send to you.


From: Steve Rothschild [mailto:Rothschild@khpblaw.com]
Sent: Tuesday, February 03, 2015 5:45 PM
To: Krasik, Curtis B.
Subject: RE: Draft MOU of Settlement Terms


Curt:


      Glenn's Live Nation agreement terminates when he is recouped.  Based on the current trajectory, he probably has another two years or so.


Steve

1

Stephen D. Rothschild
King, Holmes, Paterno & Berliner LLP
1900 Avenue of the Stars, 25th Floor
Los Angeles, CA 90067
Telephone:  310-282-8986
Facsimile:   310-282-8903
Email:       rothschild@khpblaw.com

From: Krasik, Curtis B. [mailto:Curtis.Krasik@klgates.com]
Sent: Tuesday, February 03, 2015 1:35 PM
To: Steve Rothschild
Subject: Draft MOU of Settlement Terms


FOR SETTLEMENT PURPOSES ONLY


Steve,

In an effort to keep the process moving given our tight timeframe, attached is a draft MOU of settlement terms.  It includes the terms on which we have agreed as well as our counter-offer on the 2 outstanding points per my email of this morning.  Please give me a call after you have spoken to your client.  Thank you.


This electronic message contains information from the law firm of K&L Gates LLP. The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only.  If you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this e-mail in error, please contact me at Curtis.Krasik@klgates.com.-4


This electronic message contains information from the law firm of K&L Gates LLP. The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only.  If you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this e-mail in error, please contact me at Curtis.Krasik@klgates.com.-4

## Memorandum of Understanding on Material Settlement Terms

Plaintiff Glenn Danzig, on the one hand, and Defendants Cyclopian Music, Inc. and Gerard Caiafa (collectively, "Cyclopian"), on the other hand, agree as follows:

WHEREAS, Danzig commenced the lawsuit captioned *Glenn Danzig v. Gerald Caiafa and Cyclopian Music, Inc.*, Case No. 14-CV-02540 RGK (the "Lawsuit");

WHEREAS, Cyclopian asserted a counterclaim against Danzig in the Lawsuit;

WHEREAS, Danzig filed certain trademark cancellation and opposition proceedings against Cyclopian that are pending in the TTAB (the "TTAB proceedings");

WHEREAS, due to the costs and uncertainties of litigation, Danzig and Cyclopian have agreed to settle all disputes between them on the material terms set forth in this memorandum of understanding (the "MOU")

NOW, THEREFORE, the parties hereto, intending to be legally bound, agree as follows:

1. The parties agree that this MOU is a binding and enforceable contract. Despite the binding nature of this MOU, the parties acknowledge that it will be to their mutual benefit to further define their respective rights and responsibilities in a more detailed settlement agreement, but that such settlement agreement shall be in all respects consistent with the terms of this MOU. The settlement agreement will supercede this MOU.

2. The parties agree to perform no fewer than ten (10) Misfits reunion shows to coincide with the 40th anniversary of the band. The parties shall split all proceeds (including merch for the tour as well as any reunion-specific merch to be sold at retail) from any such reunion endeavors 50/50 after deduction of expenses. If either side fails to perform the agreed-upon number of reunion shows, the parties agree to submit to final and binding arbitration under the Commercial Rules of Arbitration of the American Arbitration Association, by one or more arbitrators appointed in accordance with those Rules, to determine the amount of any damages sustained by the non-breaching party.

3. The parties agree to share all expenses related to reunion endeavors 50/50 unless otherwise mutually agreed in writing (e.g., in the event a third party will pay). Any other performers will be paid as employees.

4. Cyclopian agrees to Danzig's co-ownership of the Misfits word mark, the Misfits horror font logo, and the Fiend Skull in connection with consumer merchandise, including any existing or future trademark registrations relating thereto in Classes 14, 25 and 28. Each party agrees not to use any of the Misfits marks in a derogatory manner or in any way that would diminish the commercial value of any of the Misfits marks. For the avoidance of doubt, notwithstanding the reunion endeavors described herein, Cyclopian shall continue to have the exclusive right to publicly perform and record as the Misfits pursuant to the parties' 1994

settlement agreement, in connection with which Cyclopian shall continue to exclusively own the Misfits word mark, the Misfits horror font logo, and the Fiend Skull in Classes 9, 16 and 41.

     5. Cyclopian shall enter into a non-exclusive license with Live Nation with respect to its rights in Misfits intellectual property, including, without limitation rights in the Misfits word mark, the Misfits horror font logo, and the Fiend Skull. Danzig represents that he granted an exclusive license to Live Nation with respect to his rights in Misfits intellectual property that expires on _____. With regard to merch depicting Misfits intellectual property sold/licensed by Live Nation, the parties agree as follows:

    a. Merch depicting '77-'83 era Misfits designs sold/licensed by Live Nation shall be split 50/50.

    b. Merch depicting the Fiend Skull or derivatives sold/licensed by Live Nation shall be split 50/50; provided, however, Cyclopian shall be paid 100% on merch depicting Fiend Skull derivatives relating to activities of the band post '95 settlement not involving Danzig.

    c. Merch depicting reunion-specific Misfits designs sold/licensed by Live Nation shall be split 50/50.

    d. Merch depicting new Misfits designs created by Cyclopian post '95 settlement sold/licensed by Live Nation, Cyclopian shall be paid 100%; Merch depicting new Misfits designs created by Danzig post '95 settlement sold/licensed by Live Nation, Danzig shall be paid 100%.

    e. Danzig shall not depict any Misfits intellectual property in association with any Samhain or Danzig intellectual property.

The terms of paragraph 5 shall apply to any new license between Danzig and Live Nation for the sale/license of merch depicting Misfits intellectual property or a license between Danzig and any other person or entity for the sale/license of merch depicting Misfits intellectual property.

     6. With regard to the license/sale of merch depicting Misfits intellectual property under license by Cyclopian through any person or entity other than Live Nation, Cyclopian shall be paid 100%.

     7. Live Nation shall be authorized to sell merch depicting the Fiend Skull to Hot Topic under Cyclopian's settlement agreement with Hot Topic dated as of April 18, 2003.

     8. Danzig agrees to issue synch licenses (on commercially-reasonable terms) for the commercial release of masters of '77-'83 era songs owned or controlled by Cyclopian or its affiliates.

     9. Danzig and Cyclopian shall mutually release the other of all claims arising from facts or circumstances existing as of the date of settlement, including, without limitation all

claims actually asserted or which could have been asserted in the Lawsuit and/or the TTAB proceedings.

      10.    No later than February 4, 2015, the parties shall file a notice of dismissal with prejudice of the Lawsuit, with each party to bear his or its own attorneys' fees and costs; no later than February 13, 2015, Danzig shall dismiss with prejudice the TTAB proceedings, with each party to bear his or its own attorneys' fees and costs.

      11.    The terms of this MOU shall be kept strictly confidential.

      12.    This MOU may be executed in counterparts and by facsimile or PDF signature.

AGREED and ACCEPTED:

_____      Dated: _____
Glenn Danzig


_____      Dated: _____
Gerard Caiafa


_____      Dated: _____
Cyclopian Music, Inc.