**EXHIBIT 10**

# Yvette Toko

**From:** Steve Rothschild
**Sent:** Monday, February 09, 2015 12:13 PM
**To:** curtis.krasik@klgates.com
**Subject:** Danzig v. Caiafa Settlement Proposal

Curt:

     Here is Glenn's counterproposal. In an abundance of caution I am reserving his and his other advisors' rights to comment, but I have no reason to expect any material changes.

1. Reunion

a. The parties agree to perform at least six Original Misfits reunion shows to coincide, to the extent practicable, with the 40th anniversary of the band. The parties shall split all Misfits proceeds (including merch for the tour as well as any reunion-specific merch to be sold at retail) from any such reunion endeavors 50/50 after deduction of expenses. The billing shall be of the "Original Misfits."

b. The parties agree to share all expenses related to reunion endeavors 50/50 unless otherwise mutually agreed in writing (e.g., in the event a third party will pay); however, the parties shall agree on a base amount of per-party travel and other tour-related personal expenses, which each party may supplement from his or its owns funds or, in the alternative, the parties may agree that each shall be responsible for his/its own tour-related travel and personal expenses. Any other performers will be paid as employees.

2. 50/50 ownership through a jointly held entity of Misfits designs and trademarks, including, but not limited to, the following:

a. Mark numbers

    i. Registered Mark No. 2793533 (drawing with Misfits aka Fiend Skulls ("Skull"), Class 014),

    ii. Registered Mark No. 2735848 (horror font, Classes 09, 016)

    iii. Registered Mark No. 2634215 (word mark, Classes 09, 016, 041)

    iv. Registered Mark No. 2770984 (Skull, Classes 014, 016, 025)

1

      v.    Applied for Mark No. 76605515 (word mark, Class 025)

      vi.   Applied for Mark No. 76605840 (horror font, Class 025)

("Misfits designs" as used herein include the above-listed marks and the Skull and designs incorporating the Skull, the word Misfits, and the horror font.)

b.   The above-listed registrations and applications shall be assigned to the jointly owned entity.

c.   Danzig may not use Misfits designs in any manner inconsistent with paragraph 7 of the 1995 Settlement Agreement regarding rights to perform as the Misfits, except with respect to the reunion and related material. This shall not prevent Danzig from advertising that he will be performing songs from the Misfits era at Danzig or other shows and performances.

d.   Cyclopian/Caiafa shall continue to have the exclusive right to publicly perform and record as the Misfits pursuant to paragraph 7 the parties' 1995 Settlement Agreement and to use the Marks in connection with same.

3.   The parties agree not to disparage each other publically

4.   Merchandise

a.   Cyclopian shall enter into a commercially reasonable non-exclusive agreement with Live Nation terminable no earlier than the termination of Danzig's existing agreement with Live Nation. ("The Term" as used hereinafter means the period from when Cyclopian enters into such agreement to the termination of Danzig's existing agreement with Live Nation.)

b.   Cyclopian warrants that it is under no contractual obligation or other impediment that prevents it from approving new Live Nation Misfits designs.

c.   The parties shall split 50/50 all revenues derived from Misfits designs under their respective agreements with Live Nation during the Term, except as otherwise specifically stated herein.

2

d.   Neither party may unreasonably withhold from Live Nation approval of Misfits designs during the Term, except that Cyclopian shall be under no obligation to approve designs described in paragraph 4(h), below.

e.   The parties shall split all profits 50/50 from sales of Misfits designs that existed before 1995 or that are reunion designs, sold through Live Nation or any other person or entity.

f.   The parties each shall retain 100% of revenues from their own post-1995 Misfits designs existing as of the execution of this MOU, sold through Live Nation or any other person or entity.

g.   Cyclopian shall retain all revenues from non-Live Nation sales of and licenses for products bearing Misfits designs during the Term, except as stated elsewhere, including in paragraphs 1 and 4(e) with respect to reunion and pre-1995 products and designs.

h.   Cyclopian shall retain 100% of revenues from designs that prominently feature images of the new Misfits, the names of New Misfits songs or album titles, or other readily apparent references to the new Misfits, whether sold or licensed through Live Nation or otherwise.

i.   Danzig shall retain 100% of revenues from all non-apparel products or licenses for such products bearing Misfits designs that are not sold or licensed through Live Nation (except as otherwise stated in paragraphs 1 (reunion merchandise) and 4(e) (pre-1995 designs).  Non-apparel sold or licensed through Live Nation shall be subject to a 50/50 split.

j.   After the Term, each party retains 100% of revenues from his/its sales/licenses of Misfits products/designs, through Live Nation or otherwise, except as per 1(a) and 4(e) above, and unless they agree otherwise in writing.

5.   In the event that Cyclopian does not reach an agreement with Live Nation, each party shall retain all revenues from their own sales of and licenses to sell products bearing Misfits designs, except as otherwise stated in paragraph 1(a) and 4(e) above regarding revenues from pre-1995 and reunion designs, which the parties shall split 50/50.

6.   Danzig shall grant Cyclopian or its affiliate sync licenses on commercially reasonable terms to his Misfits songs. Cyclopian or its affiliate shall not materially change the songs.

7.   Danzig shall not depict any Misfits intellectual property in association with any Samhain or Danzig intellectual property.

8. The parties shall negotiate a long form agreement in good faith which will supersede the MOU.

9. Live Nation and Danzig shall be authorized to sell merch depicting the Fiend Skull to Hot Topic notwithstanding Cyclopian's settlement agreement with Hot Topic dated as of April 18, 2003, and Hot Topic shall no longer be bound by the 2003 agreement with respect to Danzig and his merchandisers and/or licensees.

10. Any future disputes between or among the parties arising from or under the MOU or long form agreement, including, but not limited to, any dispute as to the long form agreement's terms, shall be submitted to binding arbitration before and under the rules of ADR Services or such other arbitration service as the parties may agree in Los Angeles County, California; arbitration agreement to be self- executing; prevailing party to recover reasonable attorney fees, arbitrator's fees, and other costs.

Stephen D. Rothschild
King, Holmes, Paterno & Berliner LLP
1900 Avenue of the Stars, 25th Floor
Los Angeles, CA 90067
Telephone:  310-282-8986
Facsimile:   310-282-8903
Email:        rothschild@khpblaw.com