**EXHIBIT 23**

# Steve Rothschild

| | |
|---|---|
| **From:** | Steve Rothschild |
| **Sent:** | Tuesday, February 17, 2015 6:22 AM |
| **To:** | 'Krasik, Curtis B.' |
| **Subject:** | RE: Danzig v. Caiafa, Initiating meet and confer process pursuant to L.R. 37-1 |

Curt:

The pressing need is for documents relevant to defendants' motion for summary judgment, including documents responsive to request numbers 4, 5, 13, 14, 16, 18, 19, 22, 24 and 26. ***Defendants, not plaintiff, has those***. Will you produce them before filing your motion for summary judgment?

---

**From:** Krasik, Curtis B. [mailto:Curtis.Krasik@klgates.com]
**Sent:** Sunday, February 15, 2015 7:38 AM
**To:** Steve Rothschild
**Cc:** Krasik, Curtis B.
**Subject:** Re: Danzig v. Caiafa, Initiating meet and confer process pursuant to L.R. 37-1

Steve,
I would be happy to schedule a meet and confer on this just as soon as you produce the documents responsive to defendants' RFPs, so we can address each side's document issues in a reciprocal and even-handed manner. We, of course, presently have concerns with certain objections you asserted but thought it would make sense to wait to see the documents you actually produce to avoid addressing these issues piecemeal. Please advise when we can expect to receive your documents (which, as you know were due and should have been produced nearly a month ago) to advance this process. Thank you.
On Feb 13, 2015, at 9:27 PM, "Steve Rothschild" <Rothschild@khpblaw.com> wrote:

> Curt:
>
> I write pursuant to Local Rule 37-1 to initiate the meet and confer process concerning plaintiffs' woefully inadequate responses to plaintiff's requests for production and their cosmetic document production. Please let me know when you would like to discuss the issues raised in this email as soon as possible.
>
> As a preliminary matter, defendants have failed to provide a privilege log as required by the Federal Rules of Civil Procedure. Please do so as soon as practicable.
>
> As a second preliminary matter, defendants' objections that responsive documents are equally available to plaintiff, or that responsive documents were filed with the TTAB, do not excuse producing responsive documents. First, after an extensive investigation, plaintiff does not have access to litigation from or preceding the litigation that led to the 1995 settlement agreement, or documents reflecting the settlement negotiations. Second, the parties may not agree on what documents were produced in TTAB proceedings. If, in lieu of producing documents you contend were produced in the TTAB, you wish to provide a list and to produce documents we identify to which we do not have access, we will accept that compromise.
>
> As a third preliminary matter, if the reason for defendants' vague and ambiguous objection to the word "Misfits" is that the classic Misfits are not the same as the Jerry Only Misfits, "Misfits" as used in the requests refers to the classic Misfits.

1

As a fourth preliminary matter, that relevant documents are subject to a confidentiality agreement does not excuse their production. Defendants' obligation is to notify Hot Topic and/or other relevant third parties of the requests so that they have an opportunity to object. Have you done that?

A. <u>Defendants' Document Production</u>

Defendants' February 11, 2015 348 page document production consists almost entirely of documents that plaintiff produced to defendants in the TTAB proceedings and/or that defendants filed publicly with the PTO.

The sole "new" documents defendants relevant to plaintiff's claims that defendants produced are (1) Mr. Cafiero's 2009 email to Hot Topic falsely reaffirming that defendants owned the exclusive rights to the Misfits Skull; and (2) documents showing the status of former band members. Defendants produced the 2009 document only because I had told you a day or two before the production that we already had it. Defendants also produced a few pages of documents responsive to request nos. 65, 66, 67 and 68. Obviously, if defendants have additional documents responsive to those requests, they must produce them.

Defendants failed to produce <u>any</u> documents responsive to the following requests, contrary to their responses to plaintiff's document requests in which defendants agreed to produce their responsive documents. Defendants must produce documents as agreed or state that, after a diligent search, they have no responsive documents.

Request No. 1: Documents supporting defendants' contention that it was not plaintiff's original idea to use the Skull in connection with the Misfits.

Request No. 3: Documents showing that the Skull was not associated with the Misfits when plaintiff was a member of the group.

Request No. 4: Documents showing that plaintiff abandoned the Skull design.

Request No. 5: Documents relating to the creation of the Skull design as used in connection with the Misfits.

Request No. 13: Documents referring to the 1995 agreement and rights to the Skull.

Request No. 14: Agreements with Hot Topic regarding the Skull.

Request No. 16: Documents relating to whether plaintiff could license the Skull to Hot Topic.

Request Nos. 18, 19, 22: Documents threatening Hot Topic if it buys the Skull design from plaintiff.

Request Nos. 24, 26: Hot Topic requests that defendants consent to Hot Topic licensing the Skull from plaintiff, and defendants responses

Request Nos. 45, 46: Documents supporting defendants' representations to the PTO that it owns the exclusive rights to the Skull design.

Request No. 63: Documents showing plaintiff's use of the Skull in commerce.

Request Nos. 69, 70: Documents reflecting efforts to stop plaintiff or anyone under his control from using any trademark you own.

Request No. 71: Documents showing consumer confusion as to whether the Misfits were playing at plaintiff's concerts.

Request No. 72: Documents reflecting inquiries whether the Misfits were performing with plaintiff.

Request No. 73: Documents reflecting inquiries whether plaintiff had the right to tour or perform as the Misfits.

Request Nos. 74, 75: Documents showing harm and damages defendants suffered as a result of plaintiff's use of any of defendants' trademarks.

Request No. 76: Documents relating to profits plaintiff received from any use of a trademark defendants own.

Request No. 77: Documents identified in defendants' initial disclosures.

B. <u>Defendants' Refusal to Produce Relevant Documents</u>

Request No. 2. I presume that by defendants' relevancy objections they intend to communicate that they are not contending that someone other than plaintiff first incorporated the Skull for use in connection with the Misfits. If my presumption is incorrect, defendants must either produce the requested documents or state that after a diligent search they do not have them.

Request No. 6. Documents relating to the creation of the Misfits "Horror Font" are relevant because they will confirm that plaintiff is responsible for creating the logos and artwork associated with the Misfits, and that there is no rational basis to assert that the font is a Misfits design or logo but the Skull is not.

Request No. 7. I presume that by defendants' relevancy objections they intend to communicate that they are not contending that they created any Misfits marks. If my presumption is incorrect, defendants must either produce the requested documents or state that after a diligent search they do not have them.

Request No. 8. I presume that by defendants' relevancy objections they intend to communicate that they are not contending that plaintiff abandoned any Misfits mark besides the Skull. If my presumption is incorrect, defendants must either produce the requested documents or state that after a diligent search they do not have them.

Request Nos. 9, 10 and 52. Plaintiff does not have access to files from the 1992 lawsuit and the 1995 settlement, or to complete TTAB files. I have called each lawyer I could locate who has represented plaintiff to find them, with no success. The documents clearly are relevant since the meaning of the 1995 Agreement is at issue and ownership of the Skull.

Request No. 11 and 12. See above re: request nos. 9 and 10. In addition, plaintiff has never had access to *defendants'* communications to third parties concerning the terms of the 1995 agreement and rights to the Misfits Marks (other than two written misrepresentations to Hot Topic).

3

Request Nos. 15. That relevant documents are subject to a confidentiality agreement does not excuse their production. Defendants' obligation is to notify Hot Topic and/or other relevant third parties of the requests so that they have an opportunity to object. Have you done that?

Request No. 17. I presume that by defendants' relevancy objections they intend to communicate that they are not contending that plaintiff cannot license Misfits marks other than the Skull to Hot Topic. If my presumption is incorrect, defendants must either produce the requested documents or state that after a diligent search they do not have them.

Request Nos. 20, 21, 23, 25, 27, 29, 30, 34, 35, 38, 39-44, 47-51. I presume that by defendants' relevancy objections they intend to communicate that they are not contending that plaintiff cannot license Misfits marks other than the Skull to Hot Topic. If my presumption is incorrect, defendants must either produce the requested documents or state that after a diligent search they do not have them.

Request Nos. 28, 30, 31, 32, 36. I presume that by defendants' relevancy objections they intend to communicate that they are not contending that plaintiff cannot license the Skull to third parties other than Hot Topic. If my presumption is incorrect, defendants must either produce the requested documents or state that after a diligent search they do not have them. HOWEVER, IF DEFENDANTS HAVE REPRESENTED TO ANY THIRD PARTY THAT THEY ARE THE OWNERS OF THE SKULL, THOSE DOCUMENTS ARE RELEVANT AND MUST BE PRODUCED.

Request No. 33. Documents showing defendants' revenues from Hot Topic sales of the Skull are directly relevant to plaintiff's lost sales and, therefore, to his damages, and must be produced.

Request No. 37. Cease and desist demands regarding the Skull. These document are relevant to the credibility of defendants' claims that their representations of exclusive ownership of the Skull are in good faith.

Request No. 55. Documents reflecting agreements between Caiafa and Cyclopian. These documents are relevant to show that Caiafa is directly and knowingly benefiting from defendants' interference with plaintiff's prospective business advantage, and to establish that Cyclopian actually has the rights to the Skull and other Misfits marks that it claims.

Stephen D. Rothschild
King, Holmes, Paterno & Berliner LLP
1900 Avenue of the Stars, 25th Floor
Los Angeles, CA 90067
Telephone: 310-282-8986
Facsimile: 310-282-8903
Email: rothschild@khpblaw.com

This electronic message contains information from the law firm of K&L Gates LLP. The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only. If you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this e-mail in error, please contact me at Curtis.Krasik@klgates.com.