KING, HOLMES, PATERNO & BERLINER, LLP
HOWARD E. KING, ESQ., STATE BAR NO. 77012
STEPHEN D. ROTHSCHILD, ESQ., STATE BAR NO. 132514
ROTHSCHILD@KHPBLAW.COM
1900 AVENUE OF THE STARS, 25TH FLOOR
LOS ANGELES, CALIFORNIA 90067-4506
TELEPHONE: (310) 282-8989
FACSIMILE:  (310) 282-8903

Attorneys for Plaintiff and Counter-Defendant GLENN DANZIG

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| GLENN DANZIG, an individual,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>GERALD CAIAFA, an individual; CYCLOPIAN MUSIC, INC., a corporation; and DOES 1 through 10, inclusive,<br><br>　　　　　　Defendants.<br><br>AND RELATED COUNTERCLAIM. | CASE NO. CV14-02540 RGK-RZx<br>Hon. R. Gary Klausner<br><br>**PLAINTIFF'S *REDACTED* MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>Date:　May 5, 2015<br>Time:　9:00 a.m.<br>Ctrm.:　850<br><br>Action Filed:　April 3, 2014<br>Trial Date:　May 5, 2015 |

Plaintiff Glenn Danzig ("plaintiff") respectfully submits the following memorandum of contentions of fact and law pursuant to Local Rule 16-4.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

3421.065/875152.1

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................ 1
II. FACTUAL BACKGROUND ............................................................................. 1
   A. Defendants' Claim ................................................................................. 1
   B. Cyclopian's Purported Counterclaim ..................................................... 4
III. CLAIMS AND DEFENSES ............................................................................... 5
   A. Plaintiff's Claims .................................................................................... 5
      1. Elements Required to Establish Plaintiff's Claim for Interference with Prospective Economic Advantage ................... 6
         (a) Elements Required to Establish that Defendants Committed Trade Libel ......................................................... 6
         (b) Elements Required to Establish Defendants' Intentional Misrepresentation .............................................. 7
         (c) Elements Required to Establish Defendants' Concealment ................................................................................. 7
      2. Key Evidence In Support of Plaintiff's Claim ............................ 7
   B. Defendants' Affirmative Defenses Which They Intend to Pursue ......... 8
   C. Defendants' Claim. ................................................................................. 8
      1. Elements Required to Establish Defendants' Claim for Unfair Competition under 15 U.S.C. 1125(a)(1)(A) .................... 9
      2. Key Evidence Relied on in Opposition to Plaintiff's Claim ........ 9
   D. Issues of Law .......................................................................................... 9
IV. EVIDENTIARY ISSUES .................................................................................. 10
V. BIFURCATION OF ISSUES ........................................................................... 11
VI. JURY TRIAL .................................................................................................... 11
VII. ATTORNEY FEES ........................................................................................... 11
VIII. ABANDONMENT OF ISSUES. ...................................................................... 11

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Airweld, Inc. v. Airco, Inc.*, 742 F.2d 1184 (9th Cir. 1984)..........................................10

*Aryeh v. Canon Business Solutions, Inc.*, 55 Cal.4th 1185, 1192 (2013)...................10

*Aurora Enterprises, Inc. v. National Broadcasting Co.*, 688 F.2d 689, 694 (9th Cir. 1982)........................................................................................................................10

*Automotive Products v. Tilton Engineering, Inc.*, 1994 WL 227967 * 10 (S.D.CA. 1994)..............................................................................................................10

*Seelenfreund v. Terminix of Northern Calif., Inc.*, 84 Cal.App.3d 133, 138 (1978) ..................................................................................................................9

*Transport Truck & Trailer, Inc. v. Freightliner LLC*, 2007 WL 1850823 (D.Id. 2007) ........................................................................................................10

**STATUTES**

Fed.R.Civ.P. 54(c) .........................................................................................................5

King, Holmes,
Paterno &
Berliner, LLP

3421.065/875152 1

ii

## I. INTRODUCTION

The factual issue in this case is whether defendants Gerald Caiafa ("Caiafa") and Cyclopian Music, Inc. ("Cyclopian") (collectively, "defendants") wrongfully interfered with plaintiff's ability to sell merchandise bearing plaintiff's Misfits Skull logo, also known as the Fiend Skull, to third party retailer Hot Topic, Inc. ("Hot Topic") or any other third party. The evidence at trial will answer that question in the affirmative and establish each element of plaintiff's claim: that plaintiff has ongoing commercial relationships with Hot Topic and other third parties; that defendants interfered with those relationships by fraudulently misrepresenting that they were the exclusive owners of the Skull design, thereby libeling plaintiff by falsely representing that he did not have the right to sell retailers merchandise bearing his Skull logo; and that, as a result of defendants' fraud and trade libel, Hot Topic has refused to buy Skull merchandise from plaintiff or his licensees.

Plaintiff's damages consist of royalties he would have earned in the amount of approximately $200,000 per year. In addition, plaintiff will seek a declaration that Hot Topic may purchase Skull merchandise from plaintiff without liability to defendants, and injunctive relief prohibiting defendants from interfering with plaintiff's economic relationship with Hot Topic and other retailers based on claims that defendants are the exclusive owners of the Skull logo. Plaintiff will seek such prospective relief by amendment to his complaint or, in the alterative, pursuant to a demand for judgment pursuant to Fed.R.Civ.P. 54(c).

## II. FACTUAL BACKGROUND

### A. Defendants' Claim

Plaintiff formed the classic band The Misfits in 1977. The band performed and recorded through 1983, when it broke up. Plaintiff was The Misfits' creative engine. He named the Misfits, wrote all of the Misfits songs, and was the Misfits lead singer. Fans refer to the 1977 to 1983 period as the Misfits' "classic" era.

/ / /

3421.065/875152.1

Plaintiff is not only a musician, he also is trained a graphic artist. He created the unique font used for the word "Misfits" on the classic Misfits' album artwork and elsewhere. Most important for the instant action, he created the Misfits Skull logo, also referred to as the "Fiend" Skull (the "Skull Logo"), which he adapted from a public domain poster for a 1940s film serial called "Crimson Ghost" that depicted a stylized human skeleton wearing a flowing robe.

Caiafa, who is Cyclopian's principal and agent, did not create the idea for the Skull logo or Misfits font, design the Skull logo or the Misfits font, or write any of the Misfits' songs. Caiafa was not even a founding member of the Misfits or a featured member. Caiafa was a substitute bass player whom plaintiff invited to join the band after it was formed.

During the classic era the Misfits enjoyed success primarily among "Punk Rock" fans. After the group disbanded, plaintiff went on to achieve enormous international success and a much wider audience with his bands Samhain and Danzig. Meanwhile, Caiafa left music to work at his father's factory, except for a brief stint in an unsuccessful group called "Kryst the Conqueror."

Plaintiff's post-Misfits success brought renewed attention to the Misfits and new sales of classic Misfits albums and merchandise. Caiafa and other former Misfits members sued plaintiff to capitalize on his success. In early 1995 the parties entered into a written settlement agreement dated as of December 31, 1994 (the "1995 Agreement"). Among other things, they agreed as follows:

> 5.   Merchandising: **The parties shall be co-owners of the name and trademarks of the Misfits and all logo(s) and artwork (including all artwork used on Misfits releases for Slash, Caroline or Plan 9 Records) previously associated therewith. … The Plaintiffs and Danzig shall each have the non-exclusive right to conduct merchandising and to exploit other rights related to the use and exploitation of the name "Misfits" and accompanying logos and artwork** . . .

(Emphasis added.)

/ / /

It is beyond dispute that the logos and artwork previously associated with The Misfits and appearing on the band's albums included the Skull. The Skull appears prominently on original videos of classic Misfits' performances, in photographs of the classic Misfits, on their albums, on their album covers, and in period photos of fans.

[REDACTED]

(Emphasis added.)

In fact, that statement was knowingly false. [REDACTED] As such, it is beyond dispute that the "Skull" of which defendants claimed exclusive ownership was a "logo" and "artwork" subject to the 1995 Agreement's co-ownership provision.

Defendants have continued to make their false representations to Hot Topic and enforce the Hot Topic Agreement based on those misrepresentations. For example, on January 21, 2009, defendants' manager, John Cafiero emailed Hot Topic's Tee Shirt buyer, Mikey Seitis, as follows:

> *Cyclopian owns and controls the Misfits Trademarks, including the famous Misfits Fiend Skull logo.*

(Emphasis added.)

As a result of their fraud on Hot Topic and their trade libel as to plaintiff's co-ownership of the Skull, defendants have enjoyed repeated transactions pursuant to which they have sold a plethora of different items bearing the Skull design to Hot Topic. With each new purchase order and invoice, defendants have forced Hot Topic to look to them as the sole vendor of Skull merchandise, thereby continuing to prevent Hot Topic from purchasing merchandise bearing the Skull logo from plaintiff and his licensees.

There is no dispute that plaintiff has an existing economic relationship with Hot Topic that would include enjoyment of revenues from sales of merchandise bearing the Skull design but for defendants' misrepresentations. Hot Topic is the largest retailer of popular music related merchandise in North America. Plaintiff's merchandiser, Live Nation Merchandise, Inc., ("LNM") is one of the two largest merchandisers of such merchandise in North America. LNM, as plaintiff's licensee, already sells Misfits related merchandise to Hot Topic and Skull merchandise to other retailers. Hot Topic executives will testify that they would buy Skull merchandise from plaintiff's licensees but for the restrictions to which defendants fraudulently induced them to agree.

Defendants, by defrauding Hot Topic and libeling plaintiff, have caused plaintiff to suffer lost revenues of at least $200,000. Defendants insist that they will continue to capitalize on their misrepresentations and interfere with plaintiff's ability to sell merchandise bearing the Skull logo to Hot Topic, thereby making future damages a certainty unless enjoined or otherwise prevented by this Court.

### B. Cyclopian's Purported Counterclaim

In its defensive counterclaim, Cyclopian alleges that plaintiff advertised live performances and performed as "The Misfits" in violation of "defendants'" trademark. In fact, plaintiff co-owns the "Misfits" name. In any event, since entering into the 1995 Agreement plaintiff has never performed as The Misfits. He

has performed Misfits songs, which he is entirely within his rights to do as the songs' composer, and which nothing in the Agreement prevents him from doing.

Cyclopian has produced a few listings using the word "Misfits" in connection with plaintiff's live performances. Those listings do not purport to state plaintiff is performing as the Misfits. Even if they did, before defendants produced them plaintiff had no knowledge of those advertisements and no involvement with them and, therefore, is not responsible for them. In all likelihood, concert promoters, over whom plaintiff had no control, created and placed the ads. Moreover, defendants have produced no evidence of any damages as a result of the alleged performances, and no evidence that plaintiff profited from the advertisements. Nor is there such evidence; plaintiff's reputation and fan base accounts for his ticket sales. Nor have defendants disclosed the existence of any such evidence in their initial disclosures or any amendment thereto.

### III. CLAIMS AND DEFENSES

#### A. Plaintiff's Claims

1. Claim for damages for interference with prospective business advantage against defendants.

2. Declaratory Relief, for a declaration that Hot Topic may purchase Skull merchandise from plaintiff without incurring liability to defendants (subject to ruling granting motion for leave to amend first amended complaint or request for judgment pursuant to Fed.R.Civ.P. 54(c)).

3. Claim for injunctive relief for statutory unfair competition, in violation of California Business & Professions Code section 17200, for injunctive relief prohibiting defendants from interfering with plaintiff's economic relationship with Hot Topic, Inc. (subject to ruling granting motion for leave to amend first amended complaint or request for judgment pursuant to Fed.R.Civ.P. 54(c)).

/ / /
/ / /

KING, HOLMES, PATERNO & BERLINER, LLP

3421.065/875152.1

### 1. Elements Required to Establish Plaintiff's Claim for Interference with Prospective Economic Advantage

1. Plaintiff and Hot Topic were in an economic relationship that probably would have resulted in an economic benefit to plaintiff.

2. Defendants, or either of them, knew of the relationship.

3. Defendants, or either of them, engaged in trade libel, fraud or concealment.

4. By engaging in that conduct, defendants intended to disrupt the relationship or knew that disruption of the relationship was certain or substantially certain to occur.

5. That the relationship was disrupted.

6. That plaintiff was harmed.

7. That the conduct of defendants, or either of them, was a substantial factor in causing plaintiff's harm.

#### (a) Elements Required to Establish that Defendants Committed Trade Libel

1. That defendants, or either of them, made a statement that disparaged plaintiff's right to sell merchandise bearing the Skull logo.

2. That the statement was made to a person other than plaintiff.

3. That the statement was untrue.

4. That defendants, or either of them, knew that the statement was untrue or acted with reckless disregard of the truth or falsity of the statement.

5. That defendants, or either of them, knew or should have recognized that someone else might act in reliance on the statement, causing plaintiff financial loss.

6. That plaintiff suffered direct financial harm because someone else acted in reliance on the statement.

7. That the conduct of defendants, or either of them, was a substantial factor in causing plaintiff's harm.

KING, HOLMES, PATERNO & BERLINER, LLP

3421.065/875152.1

6

**(b) Elements Required to Establish Defendants' Intentional Misrepresentation**

1. That defendants, or either of them, represented to Hot Topic that a fact was true.

2. That the representation of defendants, or either of them, was false.

3. That defendants, or either of them, knew that the representation was false when they or one of them made it, or that they or one of them made the representation recklessly without regard for its truth.

4. That defendants, or either of them, intended for Hot Topic to rely on the representation.

**(c) Elements Required to Establish Defendants' Concealment**

1. That defendants, or either of them, disclosed some facts to Hot Topic, but intentionally failed to disclose other facts, making the disclosure deceptive.

**2. Key Evidence In Support of Plaintiff's Claim**

1. Testimony of plaintiff concerning the creation and use of the Skull logo during the classic Misfits era, and the 1995 Agreement.

2. Testimony of Hot Topic and its employees Mikey Seitis and Cindy Levitt that why Hot Topic has not purchased merchandise bearing the Skull logo from plaintiff and his licensees, and that it would do so were it not for defendants' claims of exclusive ownership of the logo.

3. Testimony of Diana Gresham-Corpus concerning plaintiff's sales of merchandise bearing the Skull logo, and anticipated sales to Hot Topic.

4. Testimony Caiafa and John Cafiero concerning the 1995 Agreement and their efforts to prevent Hot Topic from purchasing merchandise bearing the Skull logo from plaintiff.

5. Video, photographs, albums, album artwork, and merchandise bearing artwork and logos associated with the Misfits before December 31, 1994.

6. The 1995 Agreement.

7. The Hot Topic Agreement.

8. January 21, 2009 email from John Cafiero to Mikey Seitis.

9. Hot Topic business records reflecting Hot Topic's and defendants' continuing orders and sales of various merchandise bearing the Skull logo.

10. Hot Topic business records reflecting revenues Hot Topic has paid to defendants for merchandise bearing the Skull logo.

11. LNM business records of sales of Misfits-related merchandise.

### B. Defendants' Affirmative Defenses Which They Intend to Pursue

Defendants have not disclosed what affirmative defenses they intend to pursue. Defendants have argued for the first time in their reply to plaintiff's opposition to defendants' motion for summary judgment, and then in their motion in limine no. 2 to exclude evidence of wrongful conduct that they contend occurred outside the statute of limitations, that plaintiff's claim for interference with prospective economic advantage, or some portion thereof, is barred by the statue of limitations. [Document 123.]

In fact, as is set forth in summary below at section III(D) and will be set forth in detail in plaintiff's opposition to defendants' motion in limine no. 2, the statute of limitations does not bar any portion of plaintiff's claim for defendants' interference with plaintiff's business relationship. First, defendants concealed their misrepresentations to Hot Topic until after plaintiff filed the instant action. Second, defendants' wrongful conduct constituted and continues to constitute a continuing wrong. Third, the limitations period was equitably tolled by plaintiff's pursuit of his remedies in related proceedings before the Trademark Trial and Appeals Board ("TTAB").

### C. Defendants' Claim.

Claim for Unfair Competition under 15 U.S.C. § 1125(a)(1)(A).

/ / /

### 1. Elements Required to Establish Defendants' Claim for Unfair Competition under 15 U.S.C. 1125(a)(1)(A)

That plaintiff himself used or caused another to use in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which was likely to cause confusion, or to cause mistake, among consumers that (a) the new Misfits were performing with Danzig at his live music concerts; and/or (b) there is some affiliation, connection or association between the new Misfits and Danzig's live music concerts.

### 2. Key Evidence Relied on in Opposition to Plaintiff's Claim

1. Plaintiff did not cause any live performance of his to be advertised as a performance of Caiafa's Misfits or as associated in any manner with the Caiafa's Misfits.

2. Plaintiff is unaware of any advertisement or promotion describing any live performance of his as a performance of the Misfits.

3. Plaintiff has no desire to be associated with defendants' version of the Misfits. Plaintiff's belief is that defendants' version of the Misfits is regarded with disdain by critics, fans of the classic Misfits, and by his fans.

4. Plaintiff co-owns the Misfits trademark.

### D. Issues of Law

Plaintiff's claims are not barred in whole or in part by the statute of limitations.

First, the statute of limitations was tolled because defendants prevented plaintiff from discovering defendants' specific misrepresentations to Hot Topic. See, e.g., *Seelenfreund v. Terminix of Northern Calif., Inc.*, 84 Cal.App.3d 133, 138 (1978) ("[t]he principal purpose of the rule permitting postponed accrual of certain causes of action is to protect aggrieved parties who, with justification, are ignorant of their right to sue.") Defendants herein actively concealed their wrongful conduct

from plaintiff by failing to disclose their misrepresentations to Hot Topic until the instant litigation, when they produced the Hot Topic Agreement.

Second, defendants' wrongful conduct constitutes a continuing wrong. *See, e.g.*, *Transport Truck & Trailer, Inc. v. Freightliner LLC*, 2007 WL 1850823 (D.Id. 2007) (applying continuing wrong doctrine to toll limitations period applicable to interference with contract claim); *Automotive Products v. Tilton Engineering, Inc.*, 1994 WL 227967 * 10 (S.D.CA. 1994) (course of conduct following termination of franchise agreement constituted continuing wrong causing continuing harm which overcame statute of limitations defense); *Airweld, Inc. v. Airco, Inc.*, 742 F.2d 1184 (9th Cir. 1984) (citing *Aurora Enterprises, Inc. v. National Broadcasting Co.*, 688 F.2d 689, 694 (9th Cir. 1982) for the proposition that "[a]n example of … continuing violation is when a defendant actively enforces an illegal contract"). In the case at bar, defendants have continued to require Hot Topic to purchase Skull merchandise exclusively from defendants in continuous and repeated transactions for new Skull merchandise, and thereby continued to prevent defendants form purchasing Skull merchandise form plaintiff or his licensees.

Third, plaintiff's claims are subject to equitable tolling. "Equitable tolling … may suspend or extend the statute of limitations when a plaintiff has reasonably and in good faith chosen to pursue one among several remedies and that statute of limitations' notice function has been served." *Aryeh v. Canon Business Solutions, Inc.*, 55 Cal.4th 1185, 1192 (2013). In the case at bar, plaintiff timely pursued his claims concerning co-ownership of the Skull logo before the TTAB, so that defendants were on notice of the claims and have suffered no prejudice as a result of the timing of the filing of the instant action.

## IV. EVIDENTIARY ISSUES

Plaintiff does not anticipate any evidentiary issues at this time beyond those addressed in the parties' respective motions in limine.

/ / /

## V. BIFURCATION OF ISSUES

Plaintiff does not seek bifurcation of issues.

## VI. JURY TRIAL

Plaintiff's claim for damages for intentional interference with prospective business advantage is triable to a jury. A jury was timely demanded.

Plaintiff's requests for declaratory and injunctive relief are triable to the Court; however, the facts and transactions at issue are the same as those which the jury will consider in determining plaintiff's claim for damages.

## VII. ATTORNEY FEES

The prevailing party on defendants' counterclaim may claim an award of attorney fees.

## VIII. ABANDONMENT OF ISSUES.

Plaintiff has not abandoned any issues.

DATED: April 6, 2015

KING, HOLMES, PATERNO & BERLINER, LLP

By: /s/
HOWARD E. KING
STEPHEN D. ROTHSCHILD
Attorneys for Plaintiff and Counter-Defendant
GLENN DANZIG

**CERTIFICATE OF SERVICE**

    I hereby certify that on April 6, 2015, I electronically filed the foregoing **PLAINTIFF'S *REDACTED* MEMORANDUM OF CONTENTIONS OF FACT AND LAW** with the Clerk of the Court by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

                                        Yvette T. Toko

3421.065/875152.1