JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-02540-RGK (RZx) | Date | April 15, 2015 |
|---|---|---|---|
| Title | ***DANZIG v. CAIAFA, et al.*** | | |

| Present: The Honorable | R. GARY KLAUSNER, U.S. DISTRICT JUDGE |
|---|---|

| Sharon L. Williams (Not Present) | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS)** Order re: Defendants' Motion for Summary Judgment (DE 73)

## I. INTRODUCTION

On August 15, 2014, Glenn Danzig ("Plaintiff") filed his First Amended Complaint ("FAC") against Gerald Caiafa ("Caiafa") and Cyclopian Music, Inc. (collectively, "Defendants"), alleging the following claims: (1) Breach of Contract; (2) Breach of Covenant of Good Faith and Fair Dealing; and (3) Interference with Prospective Business Advantage. On November 18, 2014, the Court dismissed Plaintiff's first and second claims, leaving only the third claim to be adjudicated.

On February 20, 2015, Defendants filed the present Motion for Summary Judgment. For the following reasons, the Court **GRANTS** Defendants' Motion.

## II. FACTUAL BACKGROUND

Plaintiff alleges the following:

### A. The Formation and Breakup of "The Misfits"

In 1977, Plaintiff founded the punk rock group "The Misfits." Caiafa joined the band shortly after its formation. Between 1977 and 1983, The Misfits gained popularity and were prominent within the punk rock scene. This time period is known by The Misfits' fans as the "Classic Misfits Era." Plaintiff was the creative force behind The Misfits, writing the majority of the music and all the lyrics of the band's songs. Plaintiff was also responsible for creating The Misfits' widely popular logo, a skeletal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-02540-RGK (RZx) | Date | April 15, 2015 |
|---|---|---|---|
| Title | *DANZIG v. CAIAFA, et al.* | | |

pattern known as the "Fiend Skull." In 1983, The Misfits disbanded because Plaintiff decided to pursue other projects.

After The Misfits disbanded, Plaintiff continued to perform The Misfits' songs, to sell merchandise bearing The Misfits' name, and to refer to The Misfits in interviews and performances. After disbanding, Caiafa disavowed involvement with The Misfits' material. Caiafa worked at his father's factory and started a different band. While working on other projects, Plaintiff achieved individual success, which led to renewed interest in The Misfits. During the late 1980's, The Misfits' albums were reissued and other successful bands recorded and released The Misfits songs.

### B. The Settlement Agreement Between Plaintiff and Caiafa

In 1992, Caiafa and other former band members sued Plaintiff claiming the exclusive right to use The Misfits' name and associated logos and artwork. In 1994, the two parties entered into a written settlement agreement (the "1994 Agreement").

The 1994 Agreement contained a paragraph entitled "Merchandising" that provided that Plaintiff and Caiafa would share ownership of The Misfits' name, trademarks, logos, and artwork that existed during the Classic Misfits Era. The 1994 Agreement also provided that each party shall retain the rights in any artwork created by that party, and not previously utilized on The Misfits' albums, merchandise, or advertising. Following the 1994 Agreement, both Plaintiff and Caiafa used The Misfits' name, trademarks, logos, and artwork.

In 1995, Caiafa formed a new band, which he called The Misfits.

### C. Merchandising Efforts

Plaintiff alleges that during the six years prior to the filing of the present action, Defendants regularly interfered with Plaintiff's non-exclusive merchandising rights in The Misfits-related designs, particularly the "Fiend Skull" design. Defendants falsely asserted exclusive ownership in the designs by registering trademarks for them. Further, Defendants informed various merchandisers of these "exclusive" rights and threatened to take legal action if The Misfits-related merchandise was licensed from any entities other than Defendants. According to Plaintiff, Defendants used these threats and false assertions to persuade merchandisers to enter into licensing agreements. Further, these agreements provided that the merchandisers would not enter into licensing agreements with Plaintiff, and that if merchandisers broke that condition, Defendants would seek monetary penalties.

According to Plaintiff, within the two years prior to Plaintiff filing the FAC, Plaintiff has been a party to a written contract with Live Nation Merchandising ("LNM") which provides that LNM will act as Plaintiff's merchandising agent. Prior to that, Bravado International Group acted as Plaintiff's merchandising agent.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-02540-RGK (RZx) | Date | April 15, 2015 |
|---|---|---|---|
| Title | *DANZIG v. CAIAFA*, et al. | | |

Plaintiff names Hot Topic, one of the largest retailers of The Misfits' products, as one of the retailers and merchandisers that is allegedly held to an agreement not to license with Plaintiff. Plaintiff alleges that Defendants directed the threat of monetary penalties towards Hot Topic and that, as a result, Hot Topic has refused to conduct business with Plaintiff.

### III.  JUDICIAL STANDARD

A court may grant summary judgment where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Upon such a showing, the court may grant summary judgment on all or part of the claim. *See id*.

To prevail on a summary judgment motion, the moving party must show that there are no triable issues of material fact as to matters upon which it has the burden of proof at trial. *Celotex Corp v. Catrett*, 477 U.S. 317, 325 (1986). On issues where the moving party does not have the burden of proof at trial, the moving party need only show that there is an absence of evidence to support the opposing party's case. *See id*.

To defeat a summary judgment motion, the opposing party may not merely rely on its pleadings or on conclusory statements. *Id*. at 324. The opposing party also may not merely attack or discredit the moving party's evidence. *See Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983). The opposing party must affirmatively present specific admissible evidence sufficient to create a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324.

### IV.  DISCUSSION

Plaintiff's only claim against Defendants is Interference with Prospective Business Advantage ("Interference"). To succeed on this claim, Plaintiff must prove:

> (1) an economic relationship between [Plaintiff] and some third party, with the probability of future economic benefit to [Plaintiff]; (2) [Defendants'] knowledge of the relationship; (3) intentional [wrongful] acts on the part of [Defendants] designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to [Plaintiff] proximately caused by the acts of [Defendants].

*Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008).

Defendants argue that Plaintiff lacks sufficient evidence to raise a triable issue of material fact as to the first and third elements, and that as a result, Plaintiff's claim must fail as a matter of law.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-02540-RGK (RZx) | Date | April 15, 2015 |
|---|---|---|---|
| Title | ***DANZIG v. CAIAFA**, et al.* | | |

A. **Third Element: Intentional Wrongful Acts on the Part of Defendants Designed to Disrupt the Relationship Between Plaintiff and Hot Topic**

Defendants Defendants argue that Plaintiff lacks any actionable evidence of a wrongful act. The Court agrees.

Plaintiff's only admissible evidence of purported wrongful acts is contained in a 2009 email from Defendants to Hot Topic (the "2009 Email") and in a 2003 settlement agreement between Defendants and Hot Topic (the "2003 Agreement"). (*See* Seitis Decl., ¶ 6, Ex. 1; Krasik Decl., ¶ 8, Ex. 5.) Plaintiff argues that statements contained in these documents are "wrongful" in that they constitute trade libel and/or fraud. Those claims in turn require a false statement or representation. *See New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1113 (C.D. Cal. 2004) (elements of trade libel); *Lazar v. Super. Ct.*, 12 Cal. 4th 631, 638 (1996) (elements of fraud).

The 2009 Email was sent from John Cafiero, Vice President of defendant Cyclopian Music, Inc., to Michael Seitis, at that time the Assistant Rock Tee Shirt Buyer for Hot Topic. Mr. Cafiero stated that "Cyclopian owns and controls the Misfits trademarks, including the famous Misfits Fiend Skull logo." (Seitis Decl., ¶ 6, Ex. 1.) The 1994 Agreement between Plaintiff and Defendants, which covers ownership of The Misfits trademarks, states: "The parties shall be co-owners of the name and trademarks of the Misfits and all logo(s) and artwork . . . and . . . shall each have the non-exclusive right to conduct merchandising and to exploit other rights relating to the use and exploitation of the name 'Misfits' and accompanying logos and artwork . . . ." (Krasik Decl., ¶ 4, Ex. 1 at 3.) In light of the language in the 1994 Agreement, the Court finds that Mr. Cafiero's statement in the 2009 Email was not false. Indeed, Defendants do own and control the trademarks. While that ownership and control is not exclusive, Mr. Cafiero's statement did not represent or imply that it was. Therefore, the 2009 Email does not suffice as evidence of a wrongful act for purposes of Plaintiff's Interference claim.

Turning to the 2003 Agreement, a recital in that document states that "Cyclopian is the exclusive owner of certain intellectual properties of the band known as the 'Misfits,' including . . . a design . . . the Misfits refer to as 'Fiend Skull.'" (*Id.*, ¶ 8, Ex. 5 at 1.) Defendants argue, among other things, that to the extent Plaintiff's claim is predicated on this statement, it is barred by the statute of limitations. The Court agrees.

The statute of limitations for Plaintiff's Interference claim is two years. *See* Cal. Civ. Proc. Code § 339; *see also DC Comics v. Pac. Pictures Corp.*, 938 F. Supp. 2d 941, 952 (C.D. Cal. 2013) (finding that a claim for interference with prospective business advantage is governed by section 339's two-year statute of limitations). The claim accrues upon "discovery of the loss or damage suffered by the aggrieved party." Civ. Proc. § 339. A plaintiff "discovers" the cause of action when he has reason to suspect that someone has done something wrong to him. *DC Comics*, 938 F. Supp. 2d at 951-52; *see Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110 (1988) ("Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-02540-RGK (RZx) | Date | April 15, 2015 |
|---|---|---|---|
| Title | ***DANZIG v. CAIAFA**, et al.* | | |

wrongdoing . . . .").

While Defendants' representation that they were the "exclusive owners" of the Fiend Skull design may constitute a wrongful act, the parties executed the 2003 Agreement on April 18, 2003, almost eleven years before Plaintiff filed his original Complaint.[1] Therefore, Plaintiff's claim for Interference based on that act is time-barred.

In his Opposition, Plaintiff failed to address Defendants' statute of limitations argument. Instead, Plaintiff filed a post-Reply objection arguing that Defendants did not provide notice that they were moving for summary judgment on statute of limitations grounds because they did not reference such an argument in their Notice of Motion, in any point headings, or in their Statement of Uncontroverted Facts and Conclusions of Law. (*See* Pl.'s Objection to Reply, ECF No. 117, 3:14-27.) However, Plaintiff cites no authority for the proposition that every argument must be set forth in one of those specific locations in order to provide sufficient notice, and the Court rejects that proposition. One of the main arguments set forth in Defendants' Memorandum of Points and Authorities as to the third element is that Plaintiff has no admissible evidence within the two-year statute of limitations period. (*See* Defs.' Mot. Summ. J., 12:3-5.) Defendants referenced their statute of limitations argument several times. (*See id*., 12:16-17, 12:27-28, 13:3-5, 13:10-12.) The Court finds that this provided Plaintiff with ample notice.

Without providing any supporting evidence, Plaintiff also asserts in his objection that he did not discover Defendants' allegedly wrongful misrepresentations to Hot Topic until June 20, 2014, when Defendants filed the 2003 Agreement in support of their Motion to Dismiss Plaintiff's initial Complaint. Plaintiff's evidence and allegations are to the contrary. Felix Sebacious, who has represented Plaintiff in his merchandising efforts since at least 2008, declared that during the last six years, whenever he asked Hot Topic to purchase merchandise from Plaintiff, Hot Topic stated that they could not purchase from Plaintiff because Defendants had represented to Hot Topic that they were the exclusive owners of the Fiend Skull trademark. (Sebacious Decl., ¶¶ 18-19.) Thus, Plaintiff's own evidence shows that he suspected, or should have suspected, at least as far back as 2009, that Defendants had made a false representation that caused him harm. Plaintiff has not provided any evidence to the contrary, nor did he argue otherwise in his Opposition. Further, in Plaintiff's original Complaint, he alleged that Defendants falsely asserted exclusive rights in the Misfits trademarks to Hot Topic. (*See* Compl., ECF No. 1, ¶ 34.) Plaintiff cannot now assert that he did not discover Defendants' misrepresentations until June 20, 2014, two months after Plaintiff had already alleged the same in his Complaint.

Therefore, the Court finds that Plaintiff's claim accrued more than two years before he filed the Complaint, and Plaintiff's claim is time-barred.

---

[1] Plaintiff filed his original Complaint on April 3, 2014. (*See* ECF No. 1.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-02540-RGK (RZx) | Date | April 15, 2015 |
|---|---|---|---|
| Title | *DANZIG v. CAIAFA*, et al. | | |

**B.   First Element: An Economic Relationship Between Plaintiff and Hot Topic, With the Probability of Future Economic Benefit to Plaintiff**

Even if Plaintiff's claim were not time-barred, Plaintiff has failed to provide any admissible evidence in support of the first element, which requires that at the time the wrongful act occurred, Plaintiff had an economic relationship with Hot Topic with the probability of future economic benefit. *See Sybersound Records, Inc.*, 517 F.3d at 1151.

Plaintiff provides no evidence that he had an economic relationship with Hot Topic at the time the false statement in the 2003 Agreement was made. Plaintiff's declarants provide evidence regarding interaction between Hot Topic and two companies that have represented Plaintiff in his merchandising efforts at different times since July 2008, LNM and Bravado International Group. (*See* Sebacious Decl., ¶ 13; Seitis Decl., ¶¶ 4-5, 7-8.) However, none of them provide evidence of such interaction on the part of Blue Grape Merchandising ("Blue Grape"), which represented Plaintiff from October 1999 through 2004 or 2005, during which time the 2003 Agreement was executed. (*See* Sebacious Decl., ¶¶ 5, 24.) Mr. Sebacious' declaration attaches copies of Blue Grape catalogues from 2000 and 2001. (*See id.*, Exs. 2-3.) Yet these exhibits do not evidence a relationship with Hot Topic or any other merchandiser; on the contrary, they indicate that Blue Grape sold its products online and via a telephone hotline. (*Id.*)

Even assuming for the sake of argument that Plaintiff provided evidence that he had an economic relationship with Hot Topic, Plaintiff must also show it is "reasonably probable that the lost economic advantage would have been realized but for [Defendants'] interference." *Youst v. Longo*, 43 Cal. 3d 64, 71 (1987).

Plaintiff asserts that the declarations provide ample evidence that had Defendants "not falsely and libelously represented to Hot Topic that Cyclopian, and nobody else . . . owned the right to exploit the Skull, LNM . . . would have sold Skull merchandise to Hot Topic on behalf of Plaintiff." (Pl.'s Opp'n, 6:25-28.) However, Plaintiff "must direct [the Court's] attention to specific, triable facts," as the Court is "not required to comb through the record" to find some reason to deny a motion for summary judgment. *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1058 (9th Cir. 2009) (internal citations and quotations omitted). Plaintiff has failed to do so, as he does not cite to any specific paragraphs within those declarations. Nevertheless, the Court has reviewed the declarations and finds that they do not contain any admissible evidence to establish that but for Defendants' purportedly wrongful act, Hot Topic would have purchased merchandise bearing the Fiend Skull design from Plaintiff around the time of the 2003 Agreement.

Therefore, Plaintiff fails to raise a triable issue of material fact as to the first element of his claim. Accordingly, the Court finds that summary judgment is proper on that ground as well.

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-02540-RGK (RZx) | Date | April 15, 2015 |
|---|---|---|---|
| Title | *DANZIG v. CAIAFA*, *et al.* | | |

**V.      EVIDENTIARY OBJECTIONS**

To the extent the Court has relied on evidence to which the parties have objected, those objections are overruled.

**VI.     CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment.

**IT IS SO ORDERED.**

                                                                                    :

**Initials of Preparer**